Fred ZEIDMAN and Steven Youngelson,
Plaintiffs-Appellants,

v.

J. RAY McDERMOTT & CO., INC., et
al., Defendants-Appellees.

No. 78–2722.

United States Court of Appeals,
Fifth Circuit.
Unit A

July 27, 1981.

Thomas F. Jordan, New Orleans, La., Lipper, Lowey and Dannenberg and Burton L. Knapp, Richard B. Dannenberg, New York City, Newman, Shook & Newman, Frank G. Newman, Dallas, Tex., for plaintiffs-appellants.

Milling, Benson, Woodward, Hillyer & Pierson, John C. Cristian, W. Richard House, Jr., New Orleans, La., White & Case, Paul J. Bschorr, Richard W. Reinthaler, Patricia Nicely, New York City, for defendants-appellees.

Before THORNBERRY, RANDALL and TATE, Circuit Judges.

RANDALL, Circuit Judge:

This appeal is brought by the two named plaintiffs in a suit filed as a class action but never certified as such. The court declined to certify the class because of the absence of sufficient evidence to meet the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1). The plaintiffs submitted additional evidence on numerosity shortly after the court's refusal to certify the class, but on the same day as the plaintiffs submitted this evidence the defendants tendered to the plaintiffs the full amount of their personal claims. The district court did not consider the additional evidence submitted by the plaintiffs; instead, the court dismissed the entire action for mootness on the basis of the defendants' tender in the absence of a certified class.

The plaintiffs first argue that the district court abused its discretion by declining to find Rule 23(a)(1) to have been satisfied with respect to their purported classes (groups consisting of most non-professional and non-institutional investors who sold certain nationally-traded stock and calls within given periods of time) on the basis of evidence before the court at the time of its decision (an estimate of the total number of shares and calls traded during the relevant periods). The plaintiffs then argue that the district court erred by refusing to consider their additional evidence on the question of numerosity; they contend that the action should not have been dismissed for mootness upon the defendants' tender of their personal claims.

Based on our reading of the district court's initial decision, which we find left the plaintiffs' motion for class certification pending before the court, we hold that the district court did not abuse its discretion by declining at that time to certify the class, but we hold that the court did err by dismissing the case and refusing to consider the plaintiffs' additional evidence. We reverse the judgment of the district court dismissing this case and remand the case to the district court for proceedings consistent with this opinion.

## I. THE PROCEDURAL BACKGROUND LEADING TO THIS APPEAL

Fred Zeidman and Steven Youngelson instituted this suit on August 26, 1977 against J. Ray McDermott & Co., Inc. (McDermott), Smith Barney, Harris Upham & Co., Inc. (Smith Barney), and four of McDermott's principal officers. The litigation arises out of a highly publicized tender offer contest for control of Babcock & Wilcox Co. (B&W) that took place in mid–1977 between McDermott (whose investment banker was Smith Barney) and United Technologies Corp. (UTC). During the battle for control of B&W, Zeidman sold (on August 8) 1,000 shares of B&W common stock and Youngelson sold (on August 9) four 100–share call options for B&W common stock; both plaintiffs sold their securities at a price substantially below that eventually offered by McDermott in its final and successful tender offer.

Suing on behalf of themselves and other investors who sold B&W stock and options during this period, the plaintiffs alleged in their complaint that the defendants had engaged, during the course of the tender offer contest, in an unlawful scheme to manipulate downward the market price of B&W securities by issuing false and misleading information. According to the plaintiffs, the purpose of this alleged scheme was to frustrate a competing tender offer previously made by UTC, to coerce the B&W Board of Directors into recommending a subsequent McDermott tender offer, and eventually to effect a takeover by McDermott of B&W.

Since this appeal involves the denial of class action certification and not the merits of the plaintiffs' claims, we need not examine these allegations in any great detail. However, certain dates and events in the plaintiffs' complaint form the limits of the class that the plaintiffs seek to represent and are therefore relevant at this time.

The illegal scheme alleged by the plaintiffs begins on March 30, 1977; the plaintiffs allege that open market purchases begun by McDermott on that date were a tender offer within the meaning of section 14(d) of the Securities Exchange Act of 1934 (the 1934 Act), but that McDermott made no attempt to comply with section 14(d) (*i. e.*, to file a Schedule 13D statement in accordance with section 13(d) of the 1934 Act) at that time. The plaintiffs acknowledge that McDermott did submit a Schedule 13D statement on May 11, 1977, and that McDermott amended that statement on May 16; however, the plaintiffs allege that both the original statement and the amendment were materially false and misleading because they failed to disclose the true purpose of McDermott's substantial open market purchases of B&W stock. On August 9, 1977, Dow Jones reported in a Broad Tape release that McDermott had denied reports that it might make a tender offer for B&W stock. The plaintiffs allege that this re-

lease was materially misleading, since McDermott in fact was planning to make a tender offer; the plaintiffs further allege that the release was based on information provided to a Dow Jones reported by McDermott's chief public relations officer, and that McDermott made no attempt to correct the misleading impression created by the release. Three days after this news report—on August 12, 1977—McDermott formally announced a tender offer for B&W stock. At this point an open tender offer battle commenced, with McDermott and UTC quickly outbidding each other until McDermott made its successful bid on August 23.

On November 25, 1977, the plaintiffs moved to certify their suit as a class action. Their motion requested certification with respect to a class consisting of the plaintiffs and all other persons similarly situated "who were between March 29, 1977 and August 14, 1977 beneficial owners of Babcock & Wilcox Company shares or Babcock & Wilcox Company calls and who sold such shares or calls between March 29, 1977 and August 14, 1977" and who sustained losses on such sales by reason of the illegal scheme alleged in the plaintiffs' complaint. This class was subsequently divided by the plaintiffs into two subclasses: first, those investors who sold their B&W stock or calls between March 29 and August 8 (represented by Youngelson); and second, those investors who sold their B&W stock or calls between August 9 and August 11 (represented by Zeidman). The event that divides these two classes is the Dow Jones Broad Tape release of August 9, on which only the Zeidman class is alleged to have relied.

In February 1978 the parties submitted memoranda addressing the question of class certification. These memoranda discuss each of the several prerequisites for a class action under Federal Rule of Civil Procedure 23. As explained *infra*, however, this appeal involves only one of those prerequisites: Rule 23(a)(1)'s requirement that the class be "so numerous that joinder of all members is impracticable." Neither the plaintiffs nor the defendants dealt with this particular requirement in any great detail in their memoranda. In order to meet the numerosity requirement of Rule 23(a)(1), the plaintiffs did no more than to allege the numbers of shares that were traded during the time periods involved; in particular, the plaintiffs asserted that almost 6,000,000 B&W shares were sold between March 30 and August 8, 1977, and that approximately 666,000 shares of B&W stock and at least 14,100 "shares of B&W underlying calls" were sold between August 9 and August 11, 1977. In response, the defendants argued that the important figure was not the total number of *shares* traded, but was instead the total number of *investors* who made those trades, since only the latter figure represents the total number of potential plaintiffs. The defendants also argued that certain classes of people who sold shares or calls during this period could not be represented by the named plaintiffs; in particular, the defendants sought to exclude arbitrageurs and other professional or institutional investors, persons who exercised rather than sold their calls, persons who sold calls which were to expire during the alleged class period, and persons whose "reliance and investment motives were different" from those of the plaintiffs.

The district court issued its decision on the class certification question on June 28, 1978. The court found that each prerequisite other than numerosity had been satisfactorily established by the plaintiffs, but that there was insufficient evidence in the record to determine whether the numerosity requirement had been met.[1] While the court did not decide the numerosity issue, however, its opinion did substantially define that issue for the parties by narrowing the classes which the plaintiffs sought to represent. Most importantly, the court held that neither named plaintiff could represent "the arbitrage community or any large institutional or professional investor," since

---

1. The district court's determinations on class action prerequisites other than numerosity are not challenged by the defendants in this appeal; we therefore express no view on the merits of those determinations.

such parties' "sophistication, access to information and resources" differentiated their cases from those of the named plaintiffs. The court also excluded all holders of B&W calls that expired during the class period, for those holders would have had to sell their interests regardless of representations made by McDermott. Similarly, the court held that the plaintiffs could not represent persons who sold B&W calls but simultaneously purchased B&W stock, or who later repurchased B&W calls or stock prior to the conclusion of the tender offer battle, since these transactions were also "sufficiently distinct from those engaged by the plaintiffs so as to preclude their incorporation into the class." Finally the court held that the class could not include persons who sold their stock or calls prior to May 11, 1977, since the court had already granted the defendants' motion for summary judgment with respect to the plaintiffs' claims arising out of actions taking place before that date, i. e., out of McDermott's failure to file a Schedule 13D any earlier than it did.[2]

Having thus reduced the size of the potential classes that the plaintiffs sought to represent, the court considered whether the plaintiffs' evidence was sufficient to meet the numerosity requirement. Although the court had excluded several different groups from the plaintiffs' classes, its decision rested solely on its exclusion of institutional and professional investors. *See infra* at note 7. Since the plaintiffs' numerosity evidence consisted only of the number of shares that had been traded in each time frame, and since the presumably large group composed of all institutional and professional investors had been excluded from the potential classes, the court held that the plaintiffs had not introduced sufficient evidence of numerosity.

While the court refused to find in favor of the plaintiffs on the numerosity issue, however, it did not find to the contrary that numerosity did not exist in this case. Instead, the court seems to have left the issue

open. After discussing the numerosity question, the court concluded:

> Consequently, this aspect of the class certification will remain open until sufficient additional evidence of numerosity is introduced into the record to allow a ruling on this issue.

The court then went on to discuss each of the remaining requirements of Rule 23. In each instance the court found the requirement to have been met by the plaintiffs, although the court seems to have regarded several of the various class action prerequisites as more serious questions in this case than the numerosity requirement. For example, the court described the defendants' argument on Rule 23(a)(3)'s requirement as their "first major challenge to the certification of this class," and described the question raised by Rule 23(b)(3)'s requirement as "the most difficult question of this motion." In fact, the court premised its discussion of Rule 23(b)(3) by noting that it had already determined "that the requirements of Rule 23(a) have been satisfied;" the numerosity requirement, of course, is included in Rule 23(a). Finally, the court concluded its decision as follows:

> Accordingly, plaintiffs' motion for certification of the class is DENIED without prejudice to reassert at such time as additional evidence of numerosity may be filed into the record.

As a result of this decision, the plaintiffs commenced the compilation of certain documentary evidence on numerosity and the preparation of a memorandum specifically addressed to that issue. This additional evidence and memorandum were filed in the district court on July 6, 1978—approximately one week after the court's initial opinion on class certification. The plaintiffs relied for their new analysis on several published sources for stock exchange data, including the Weekly Reconciliation Reports of the New York Stock Exchange and Stock Clearing Corp.; weekly reports of block trades reported in *Barron's*; daily

---

**2.** The district court's decision to exclude these groups of purchasers from the plaintiffs' purported classes is not challenged by the plaintiffs in this appeal; we therefore express no view on the merits of those exclusions.

reports of individual stock trades prepared by Francis Emory Fitch, Inc.; and the daily reports of the New York Stock Exchange and Pacific Stock Exchange. Based on figures reported in these sources, the plaintiffs made the following estimates:

(1) during the Youngleson class period (May 11–August 8, 1977), 3,466 round-lot trades involving under 1,000 shares averaged 272 shares and accounted for 88% of total sale executions;

(2) during the three-day Zeidman class period (August 9–11, 1977), 567 round-lot trades involving under 1,000 shares averaged 318 shares and accounted for 80% of total sale executions; and

(3) 5 major "retail" brokerage firms sold many more shares than they purchased during the two class periods.

The plaintiffs argued that a sufficiently large number of non-professional and non-institutional investors must have sold B&W securities during the two class periods because of the extremely large number of small trades in those periods, since institutional and professional investors rarely trade in small amounts. The plaintiffs further argued that while the plaintiffs' losses come from the *sale* of securities, professional and institutional investors would primarily have been *purchasing* securities during these periods, since the largest percentage of such trading would likely be done by arbitrageurs who purchase stock in anticipation of a tender offer. Such arbitrageurs purchase from shareholders who would rather sell their stock immediately than await the final formal tender offer and incur the concomitant risk that the offer may fall through; the arbitrageurs purchase stock and accept such risks during the early stages of a tender offer, thereby hoping to profit from a tender offer price which is somewhat higher than the market

price of the stock in the initial stages of the process. *See* Rubin, "Arbitrage," 32 Bus. Law. 1315 (1977). In support of this argument, the plaintiffs relied on the evidence summarized above which relates to the trading activity of several brokerage firms which they contend deal mostly with non-professional investors; according to the plaintiffs, this evidence indicates that these firms were predominantly on the sell side of the market during the time frame of the plaintiffs' claims. Finally, the plaintiffs submitted figures from a survey of B&W shareholders prepared by B&W and dated April 15, 1977; the survey showed that there were 23,380 individual B&W shareholders holding an average of 149 shares and at least some of whom resided in every state in the nation.

On the same day as the plaintiffs submitted this additional evidence—in fact, within two hours thereafter—the defendants tendered to the named plaintiffs the full amount of their personal claims[3] and moved in the district court for the dismissal of this entire action. The brief memorandum submitted in support of the defendants' motion argued that the action must be dismissed for mootness because of the defendants' tender of the amounts claimed by the named plaintiffs, since no class had yet been certified and since by virtue of the tender no named plaintiff had any remaining claim. Zeidman and Youngelson refused to accept the tender of the amounts claimed by them in this action, but on July 11 the district court dismissed their personal claims with prejudice. The court refused to reconsider the plaintiffs' motion for class certification on the basis of the additional numerosity evidence.[4] Instead, the court heard argument on the defendants' motion to dismiss the entire action on August 2, 1978, and entered judgment dismissing the entire action on October 17, 1978.

---

**3.** The defendants tendered to Zeidman and Youngelson respectively checks for $17,375 and $5,100, the full amounts claimed by the plaintiffs, along with a letter unconditionally promising to pay court costs and any additional sums claimed by Zeidman and Youngelson in this action.

**4.** The court also refused to consider a new motion to certify the plaintiffs' classes filed on July 14, 1978. However, since we find *infra* that the plaintiffs' initial motion for certification was still pending at this time and should have been considered on the basis of the plaintiffs' additional evidence, we need not consider this subsequent motion for certification.

## II. A THRESHOLD QUESTION: THE CORRECT CHARACTERIZATION OF THE DISTRICT COURT'S INITIAL OPINION

Central to our resolution of the issues raised in this appeal is a proper understanding of the action taken by the district court in its initial opinion on class certification. The defendants characterize that opinion as a *denial* of the plaintiffs' motion for class certification, and the defendants argue that the issue was thereby concluded at least until such time as the plaintiffs might urge a new motion for class certification. However, the plaintiffs characterize the court's opinion as a narrower decision ruling only on those class action prerequisites other than numerosity; according to the plaintiffs, the motion for class certification thereafter remained *pending* before the court.

The defendants rely for their argument on the label attached to the decision by the district court in its concluding paragraph, in which the court "denied" the plaintiffs' motion without prejudice to "reassert" it at such time as additional evidence of numerosity were introduced. It is well settled, however, that an appellate court is not bound by the label a trial court puts on its opinion where underlying facts or the opinion as a whole indicate that a different action was in fact intended. *E. g., Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981); *Gallimore v. Missouri Pacific Railway Co.*, 635 F.2d 1165, 1170 (5th Cir. 1981); *Tuley v. Heyd*, 482 F.2d 590, 593 (5th Cir. 1973). In this case the court specifically refused to rule on the question of numerosity, and openly invited the plaintiffs to submit additional evidence on this issue: "this aspect of the class certification *will remain open* until sufficient additional evidence of numerosity is introduced into the record *to allow a ruling on this issue*." (Emphasis added.) Moreover, the court referred to two other prerequisites (23(a)(3) and 23(b)(3)) as more difficult questions in this case, and yet ruled in favor of the plaintiffs on both. Before reaching the requirement of Rule 23(b)(3), the court went so far as to note that all of the requirements of Rule 23(a), which of course includes the numerosity requirement of Rule 23(a)(1), "have been satisfied." Fairly read in its entirety, therefore, we think the court's initial opinion on class certification should properly be read as a limited decision leaving the plaintiffs' motion for certification pending before the court.[5]

This reading of the district court's initial opinion is buttressed by the court's special responsibility to withhold its decision on class certification until an adequate record has been developed. Although the court is directed by Rule 23(c)(1) to determine the class status of the suit "[a]s soon as practicable after the commencement of an action brought as a class action," such a decision may not be "practicable" before the relevant facts have sufficiently been developed in the record. For example, we held in *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975), that under the circumstances of that case the district court had abused its discretion by deciding the class certification issue on the basis of the pleadings alone. We explained:

> Babcock and Wilcox (B&W) stock or options during the two alleged class periods to satisfy the numerosity requirement of the rule.
>
> Like the label a trial court puts on the decision itself, however, a later characterization of that decision is not binding on an appellate court. In fact, such a post-hoc characterization should ordinarily have even less persuasive import than a label attached to the initial decision, for the parties had to act on the basis of the decision itself and cannot fairly be expected to have foreseen the court's later characterization of its action.

---

5. The defendants also rely on the characterization of the district court's initial decision on certification made by the district court in its later opinion that dismissed the entire action. At that time the court explained its earlier action as follows:

> By minute entry, dated June 28, 1978, the plaintiffs' Motion to Certify the Class was denied without prejudice for failure to satisfy the requirements of Rule 23(a)(1), Fed.R.Civ. Pro. After extensive discovery and a lengthy hearing, plaintiffs failed in their burden to prove that sufficient numbers of non-institutional, non-professional investors had sold

In class actions, particularly in the civil rights field, the general rules on burden of proof must not be applied rigidly or blindly. The court too bears a great responsibility to insure the just resolution of the claims presented; it should be loathe to deny the justiciability of class actions without the benefit of the fullest factual background.

519 F.2d at 1099. *See also Walker v. World Tire Corp., Inc.,* 563 F.2d 918, 921 (8th Cir. 1977); *Guerine v. J. & W. Investment, Inc.,* 544 F.2d 863 (5th Cir. 1977); *Weathers v. Peters Realty Corp.,* 499 F.2d 1197, 1200 (6th Cir. 1974); *Huff v. N.D. Cass Co.,* 485 F.2d 710, 713 (5th Cir. 1973).

In this case the determinative issue (numerosity) rested on published and easily accessible stock exchange data. Although we need not make such a determination, a strong argument could be made that the district court would have abused its discretion had it excluded institutional and professional investors from the plaintiffs' purported classes and then ruled against them on numerosity without giving them an opportunity to submit easily accessible stock exchange data on the size of the excluded groups. *Cf. Guerine v. J. & W. Inv., Inc., supra* (district court abused its discretion by refusing to hold an evidentiary hearing concerning substantial factual allegations raised by plaintiffs in motion for rehearing after denial of class certification).

## III. DID THE DISTRICT COURT ABUSE ITS DISCRETION BY REFUSING TO FIND "NUMEROSITY" ON THE BASIS OF EVIDENCE SUBMITTED TO IT BEFORE ITS INITIAL DECISION OF JUNE 28?

 The plaintiffs argue that the district court abused its discretion by requiring additional evidence on numerosity; according to the plaintiffs, the court should have found numerosity on the basis of the evidence initially submitted to it. In order to address this contention we must first consider the nature of the question the district court was called upon to decide. A plaintiff who seeks to certify his suit as a class action under Federal Rule of Civil Procedure 23 must establish a number of specific prerequisites, and in each case the burden of proof is on the plaintiff who seeks to thus certify his suit. *See* 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 23.02–2, at 23–96 (1980). The particular requirement at issue here is stated in Rule 23(a)(1): the purported class must be "so numerous that joinder of all members is impracticable." In order to satisfy his burden with respect to this prerequisite, a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members. *See* J. Moore & J. Kennedy, *supra,* at ¶ 23.05[3]. However, this does not mean that the actual number of class members is the determinative question, for "[t]he proper focus [under Rule 23(a)(1)] is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Philips v. Joint Legislative Committee,* 637 F.2d 1014, 1022 (5th Cir. 1981). *See Garcia v. Gloor,* 618 F.2d 264, 267 (5th Cir. 1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981). Thus, a number of facts other than the actual or estimated number of purported class members may be relevant to the "numerosity" question; these include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim. *See Garcia v. Gloor, supra,* at 267; 7 C. Wright & A. Miller, *Federal Practice & Procedure* § 1762, at 600–03 (1972). It is not surprising, therefore, that no definitive pattern has emerged under Rule 23(a)(1) in terms of the number of purported class members. Indeed, classes with as few as twenty-five or thirty members have been certified by some courts. *See* C. Wright & A. Miller, *supra,* at 597–99.

 We must emphasize, however, that this issue is—as are other questions involved in the decision to certify a class action—left to the sound discretion of the district court. Because the certification of a class action has such a great effect on the

district court's control of litigation before it, and because certification involves substantial fact questions, we will not reverse a district court's decision on class certification absent an abuse of its discretion. *E. g., Walker v. Jim Dandy Co.*, 638 F.2d 1330, 1334 (5th Cir. 1981). *See* J. Moore & J. Kennedy, *supra*, ¶ 23.05[3], at 23–169.

▮ The evidence submitted to the district court before its initial decision on class certification consisted only of the number of shares traded during the periods involved in the plaintiffs' two purported classes: the plaintiffs alleged that almost 6,000,000 shares of B&W stock were traded during the time-span of the Youngelson class and that 666,000 shares of B&W stock and at least 14,100 "shares of B&W underlying calls" were traded during the time-span of the Zeidman class. The plaintiffs' discussion of these figures in their initial memorandum on class certification is brief, but their argument seems to have relied on a common-sense assumption. In particular, the plaintiffs appear to have presumed that *any* class composed of the sellers of a nationally traded security during a period in which hundreds of thousands or even millions of shares of the security were traded must necessarily be "so numerous that joinder of all members is impracticable." This assumption is indeed a reasonable one, since it is difficult to imagine any such class composed of a small number of sellers, and since the class would in all likelihood be geographically dispersed and difficult to identify. As one would expect, therefore, the prerequisite expressed in Rule 23(a)(1) is generally assumed to have been met in class action suits involving nationally traded securities. As one commentator explains:

> Joinder impracticability [numerosity] is rarely contested in class actions brought

on behalf of shareholders or traders in publicly owned corporations. In class actions brought on behalf of securities traders, federal trial courts are quite willing to accept common sense assumptions in order to support a finding of numerosity.

5 J. Newberg, *Class Actions* § 8812, at 836 (1977).

Indeed, a number of courts have found the numerosity requirement to have been met with respect to a purported class of purchasers or sellers of nationally traded securities on the basis of evidence similar to that initially offered by the plaintiffs in this case. *See Greene v. Emersons, Ltd.*, 86 F.R.D. 47, 53 (S.D.N.Y.1980) (1.3 million outstanding shares held by 1,271 shareholders); *Greenspan v. Brassler*, 78 F.R.D. 130, 132 n.4 (S.D.N.Y.1978) (964,000 shares traded during time period at issue); *Trattner v. American Fletcher Mortgage Investors*, 74 F.R.D. 352, 356 (S.D.Ind.1976) (stock traded on New York Stock Exchange); *Brady v. Lac, Inc.*, 72 F.R.D. 22, 27 (S.D.N.Y.1976) (1.3 million outstanding shares); *In re Penn Central Securities Litigation*, 62 F.R.D. 181, 188 (E.D.Pa.1974) (1.5 million outstanding shares, viewed in light of the geographical dispersion of the shareholders); *Hawk Industries, Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619, 623 (S.D.N.Y.1973) (574 transactions on New York Stock Exchange during period at issue); *Price v. Skolnik*, 54 F.R.D. 261, 264 (S.D.N.Y.1971) (3 million outstanding shares, 1,100 shareholders, and 17 market-makers listed in the "pink sheet"); *Berland v. Mack*, 48 F.R.D. 121, 127 (S.D.N.Y. 1969) (4.5 million shares traded during period at issue, 16,000 shareholders, large number of certificates delivered to transfer agents); *Jacobs v. Paul Hardeman, Inc.*, 42 F.R.D. 595, 598 (S.D.N.Y.1967) (7,000 outstanding debentures).[6]

---

**6.** Some courts, however, have found the numerosity requirement *not* to have been met with respect to a purported class of purchasers or sellers of nationally traded securities on the basis of evidence similar to that initially offered by the plaintiffs in this case. *See Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968) (unsupported assertions respecting the number of shares traded and the average size of each

trade were "pure speculation"); *Lloyd v. Industrial Bio-Test Laboratories, Inc.*, 454 F.Supp. 807, 812 (S.D.N.Y.1978) (class of purchasers of options does not meet numerosity requirement merely because the options were traded on a national exchange); *Waldman v. Electrospace Corp.*, 68 F.R.D. 281, 285 (S.D.N.Y.1975) (class composed of purchasers of stock or convertible debentures over a four-year period does not

Although the evidence initially submitted by the plaintiffs would ordinarily seem adequate to meet the numerosity requirement in a securities case, two factors distinguish this case from the more common cases such as those cited above. In the first place, the plaintiffs do not seek to represent *all* investors who purchased B&W securities during the periods at issue; the district court excluded from the plaintiffs' purported classes the undeniably significant group composed of "the arbitrage community" and other "large institutional or professional" investors, and the plaintiffs do not contest this exclusion on appeal. What the district court had to decide, therefore, was whether the remaining class composed only of *noninstitutional* and *non-professional* investors met the numerosity requirement.[7]

In the second place, the district court did not find that the numerosity requirement had not been met by the plaintiffs, but instead left the question open pending submission of additional evidence. As we found in Part II of this opinion, the district court's initial decision on class certification found the record inadequate to make any determination with regard to numerosity until evidence on the size of the excluded groups were introduced, and then properly gave the plaintiffs an opportunity to submit such evidence.

Viewed in this light, we cannot say that the district court's initial decision on class certification was an abuse·of its discretion. Where an admittedly large and potentially dominant group is excluded from a plaintiff's purported class, it is obviously difficult to estimate the numerosity of the plaintiff's class absent some evidence of the size either of the excluded group or of the remaining class. Thus, some courts have indeed refused to find numerosity on the

basis of evidence similar to that initially introduced by the plaintiffs, in situations where—as here—the plaintiffs have introduced no evidence as to the size of a particular subclass of securities buyers or sellers which they seek to represent. *See Petersen v. Federated Development Company*, 387 F.Supp. 355, 360–61 (S.D.N.Y.1974) (while 200,000 shares had not been tendered and purchased in the course of a given tender offer, plaintiff who had not tendered could not represent those whose tender was refused, and was not entitled to class certification absent evidence of the number of shareholders who, like the plaintiff, had not tendered their shares); *Cannon v. Texas Gulf Sulphur Co.*, 53 F.R.D. 216, 219 (S.D.N.Y.1971) (although 500,000 shares traded in period at issue, market behavior suggested that the great majority of trades were not based on allegedly misleading information; therefore plaintiff was not entitled to class certification absent evidence of the number which claimed to have relied on such information). We conclude therefore that the district court did not abuse its discretion by holding the numerosity issue open pending submission of additional evidence on the role of professional and institutional investors in the market for B&W securities.

## IV. DID THE DISTRICT COURT ERRONEOUSLY DISMISS THIS ACTION FOR MOOTNESS?

### A. Framing the Issues

▮▮▮▮ The district court refused to consider the additional evidence on numerosity that the plaintiffs submitted on July 6, 1978; instead, the court considered and granted the defendants' motion (also submitted on July 6) to dismiss the entire action. This decision was based on the court's

---

meet numerosity requirement merely because of evidence showing a substantial increase in number of shares outstanding and decrease in number of debenture holders of record).

7. Although the district court excluded certain other groups as well (*e. g.*, sellers of calls which expired during the class period), nothing in the record suggests that these groups are so significant as to cast doubt on the numerosity of the plaintiffs' purported classes. Moreover, the

district court's decision not to certify the class on the evidence initially submitted to it seems to have been based solely on its exclusion of professional and institutional investors: while the court excluded these various groups in its initial decision on class certification, its discussion of the numerosity requirement relied *only* on its exclusion of professional and institutional investors.

conclusion that all claims asserted in the case had become moot by virtue of the defendants' tender to the named plaintiffs of the full amount of their personal claims.[8] In so holding the court relied on the general principle that a purported class action becomes moot when the personal claims of all named plaintiffs are satisfied and no class has properly been certified. In such a case there is no plaintiff (either named or unnamed) who can assert a justiciable claim against any defendant and consequently there is no longer a "case or controversy" within the meaning of Article III of the Constitution. *See, e. g., Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348–49, 46 L.Ed.2d 350 (1975); *Board of School Commissioners v. Jacobs,* 420 U.S. 128, 130, 95 S.Ct. 848, 850, 43 L.Ed.2d 74 (1975); *Sannon v. United States,* 631 F.2d 1247, 1252 (5th Cir. 1980).

The district court's July 6 decision applying this general principle to the facts of this case was premised on the court's characterization of its initial decision on class certification; the court explained that its June 28 order had denied the plaintiffs' motion for class certification because of the plaintiffs' failure to meet their burden of proof on numerosity. *See supra* at note 5. However, as we have already decided in Part II of this opinion, the district court's June 28 order cannot properly be read as a denial of the plaintiffs' motion for class certification. As we read the district court's order of that date, the plaintiffs' motion was still pending on July 6, when the plaintiffs submitted additional evidence and the defendants tendered the full amount of the plaintiffs' personal claims. Moreover, no party suggests that the plaintiffs' motion for class certifi-

cation was untimely or that their prosecution of that motion was not diligent; the plaintiffs submitted their motion within three months of the filing of their complaint and approximately one month after the defendants' filing of their answers, and the plaintiffs submitted additional evidence on numerosity only eight days after the court's initial decision on class certification.

The question before us, therefore, is whether the general principle relied upon by the district court in its decision dismissing this action is valid in the context of the plaintiffs' timely filed and diligently pursued motion for class certification and of our reading of the district court's initial decision on that motion. In particular: should a purported but uncertified class action be dismissed for mootness upon tender to the named plaintiffs of their personal claims, despite the existence of a timely filed and diligently pursued pending motion for class certification? This question must be distinguished from a number of related but analytically distinct issues which are *not* at stake in this appeal. We will consider these related issues first, for they help to isolate and define the question that is now before us.

1. Does the case present a live controversy?

 The first related question is whether there exists a live controversy between the defendants and at least some unnamed member of the plaintiffs' purported classes. As the Court recently explained in *United States Parole Commission v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), the mootness doctrine has two aspects: a justiciable case must

---

**8.** The district court also found that the rights of the purported class members would not be prejudiced by dismissal of the action. The court apparently made this finding in order to comply with Federal Rule of Civil Procedure 23(e), which states that a class action may be dismissed or compromised only upon approval of the court and with notice to members of the class in such manner as the court directs. *See Roper v. Consurve, Inc.,* 578 F.2d 1106, 1110 (5th Cir. 1978), *affirmed sub nom. Deposit Guaranty National Bank v. Roper,* 445 U.S.

326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); *Pearson v. Ecological Science Corp.,* 522 F.2d 171, 176–77 (5th Cir. 1975).

While the requirement of Rule 23(e) must be met before a class action may be dismissed, however, a finding that dismissal is not barred by Rule 23(e) does not mean that the suit should be dismissed for mootness. We therefore need not consider the merits of the district court's determination that the rights of the purported class members would not be prejudiced by dismissal of this suit.

continue at each stage of the litigation (1) to present a "live controversy," and (2) to be urged before the court by parties who have a "personal stake" in that controversy. 415 U.S. at 396. The controversy involved in this case is undoubtedly still live despite the mootness of the named plaintiffs' individual claims. The classes which the plaintiffs seek to represent contain at least some number of persons who sold B&W securities during the periods at issue. If the named plaintiffs or their successors establish their case on the merits, these persons will be entitled to recover damages from the defendants. Whether the plaintiffs will actually prevail on the merits is of course irrelevant to the mootness question. *Cruz v. Hauk*, 627 F.2d 710, 715 (5th Cir. 1980). The case before us, therefore, rests not on whether there exists a live controversy, but on whether the district court has before it some plaintiff with a personal stake in that controversy. *Cf. Satterwhite v. City of Greenville*, 634 F.2d 231 (5th Cir. 1981) (*en banc*) (remanding to the district court, because of the inadequate development of the record, for a determination of whether a live controversy existed in the case).

2. Do the named plaintiffs have standing to bring this appeal?

 In the second place, no question has been raised as to the named plaintiffs' standing to appeal the district court's refusal to certify a purported class. This issue has been resolved in favor of the plaintiffs by the Supreme Court's recent decisions in *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), and *United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). *Roper* involved a factual situation similar to that now before us. In *Roper*, two credit card holders sued the bank which had issued the cards to

recover allegedly usurious charges. Shortly after the district court denied the plaintiffs' motion to certify a class composed of all such credit card holders, the bank tendered to each of the plaintiffs the full amount of their personal claims and the district court dismissed the case; the plaintiffs refused the offer and appealed the district court's denial of certification and dismissal of the case. The Supreme Court affirmed the decision of this court, *Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir. 1978), holding that the named plaintiffs had standing to appeal the denial of class certification even though the defendant's tender had rendered moot the named plaintiffs' personal claims. Although our decision relied on broader grounds, 578 F.2d at 1110–11, the Supreme Court seems to have rested its affirmance on the named plaintiffs' assertion of a cognizable economic interest in the certification question; the plaintiffs had asserted throughout the litigation a "desire to shift to successful class litigants a portion of those fees and expenses incurred in [the] litigation," and this concern "supplied the personal stake in the appeal required by Article III." 445 U.S. at 334 n.6 and 337, 100 S.Ct. at 1171 n.6 and 1172.[9]

Although *Roper* clearly rested on the named plaintiffs' assertion of an economic interest in the certification of their purported class, the Court did not state in *Roper* that a cognizable interest was the *only* fact which can establish the named plaintiffs' standing to appeal the denial of certification after their individual claims become moot. Indeed, the Court recognized the relevance to justiciability questions in the class action context of several other important interests, including the responsibilities both of the named plaintiffs and of the district court to the members of the absent class, and the rights of the putative class

9. Although the Court rested its decision in *Roper* on the named plaintiffs' allegations of an interest in shifting to successful class litigants a portion of their attorneys fees and expenses, it is unclear from the opinion how such an interest might actually have existed. Justice Powell stated in his dissent that the only cost specified by the plaintiffs was a contingent

attorneys fee; the fee was to be paid from the named plaintiffs' recovery, and no suggestion was made that the plaintiffs could recover this amount from successful class litigants. 445 U.S. at 350–351, 100 S.Ct. at 1179–1180 (Powell, J., dissenting). This fact is apparently conceded by the majority. 445 U.S. at 338 n.9, 100 S.Ct. at 1173 n.9.

members as intervenors. 445 U.S. at 332, 100 S.Ct. at 1170. These interests were not discounted but merely found unnecessary to the decision in the case: "resolution of the narrow question presented requires consideration only of the private interest of the named plaintiffs." *Id. See also* 445 U.S. at 340 & n.12, 100 S.Ct. at 1174 & n.12.

On the same day as the Supreme Court decided *Roper*, the Court reached in another case the situation presented by a named plaintiff who asserts no cognizable interest in the certification question. In *United States Parole Commission v. Geraghty, supra*, the Court held that a named plaintiff whose personal claim had expired had standing to appeal the district court's denial of certification despite the complete absence of any cognizable interest in the certification question. Geraghty, a federal prisoner, brought a class action suit challenging certain federal parole regulations. After the district court denied Geraghty's motion to certify his purported class (composed of all federal prisoners who are or would become eligible for parole) and granted the Parole Commission's motion for summary judgment on Geraghty's individual claim, Geraghty was in fact released from prison on parole. Geraghty appealed the district court's denial of certification, but at no point alleged any personal interest—economic or otherwise—in the certification question. *See* 445 U.S. at 420, 100 S.Ct. at 1221 (Powell, J., dissenting). The Court did not, however, find this fact to be dispositive. Instead, the Court looked to the purposes behind the Article III mootness doctrine. The Court emphasized the "flexible character" of that doctrine, and found the "personal stake" requirement of the doc-

trine to be met despite Geraghty's lack of a "legally cognizable interest" in "the traditional sense." As the Court explained:

> [T]he purpose of the "personal stake" requirement is to assure that the case is in a form capable of judicial resolution. The imperatives of a dispute capable of judicial resolution are sharply presented issues in a concrete factual setting and self-interested parties vigorously advocating opposing positions .... The question whether class certification is appropriate remains as a concrete, sharply presented issue ... [and] Respondent here continues vigorously to advocate his right to have a class certified.

445 U.S. at 403–04, 100 S.Ct. at 1212. On this basis the Court concluded that despite his lack of a cognizable interest in the certification question Geraghty retained a "personal stake" in that issue "sufficient to assure that Art. III values are not undermined." 445 U.S. at 404, 100 S.Ct. at 1212. *See* Note, "Class Standing and the Class Representative," 94 Harv.L.Rev. 1637, 1650–52 (1981) (arguing that *Geraghty* altogether abolishes the "personal stake" requirement in the class action context).

Like the named plaintiffs in *Roper*, Zeidman and Youngelson have asserted an economic interest in certification. And, like Geraghty, these named plaintiffs have vigorously advocated their right to class certification, and have done so in a concrete factual setting capable of judicial resolution. Therefore, in accordance with both *Roper* and *Geraghty*, the named plaintiffs now before us have standing to bring this appeal.[10]

---

10. There is a serious tension between the Court's companion decisions in *Roper* and *Geraghty*. Although both cases find justiciable an appeal from the denial of class certification by a named plaintiff whose individual claim had become moot, the two cases rest on very different theories: *Roper* looks to the named plaintiffs' cognizable economic interest in the certification decision, while *Geraghty* looks to whether the case is presented in a form capable of judicial resolution. Of course, nothing in *Roper* explicitly contradicts the broader theory enunciated in *Geraghty*. As noted above, the

Court did not state in *Roper* that a cognizable interest was the *only* fact that can establish the named plaintiffs' standing to appeal; such an interest was found to be one, but not the only, source of Article III standing. We find it difficult, however, to ignore the fact that the Court's opinions in *Roper* and *Geraghty* were handed down on the same day by the same Court. The Court had the opportunity to decide *Roper* on the basis of *Geraghty*, but did not do so; instead, the Court rested its decision on the plaintiffs' assertion of an economic interest in class certification. Despite the fact

3. Are the named plaintiffs "adequate class representatives" under Fed.R. Civ.P. 23(a)(4)?

 A third related question that is not now before us is whether on remand the named plaintiffs can adequately represent their purported classes in accordance with Federal Rule of Civil Procedure 23(a)(4).[11] A holding that a class action need not be dismissed for mootness despite the expiration or satisfaction of the named plaintiffs' personal claims "does not automatically establish that [the named plaintiffs are] entitled to litigate the interests of the class [they] seek to represent, but it does shift the focus of examination from the elements of justiciability to the ability of the named representative to 'fairly and adequately protect the interests of the class.' Rule 23(a)." *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975). *See United States Parole Commission v. Geraghty, supra*, 445 U.S. at 405–07, 100 S.Ct. at 1214; *Ford v. United States Steel Corp.*, 638 F.2d 753, 761–62 (5th Cir. 1981); *Harris v. Peabody*, 611 F.2d 543, 554 (5th Cir. 1980).

We think it clear that Zeidman and Youngelson are adequate class representatives for the narrow purpose now at issue, *i. e.*, for the prosecution both of this appeal and of their pending motion for certification in the district court. Both named plaintiffs refused the defendants' tender and continued vigorously and competently to urge class certification, and we perceive no conflict of interest between these named plaintiffs and the unnamed members of the classes they seek to represent. Moreover, little or no active representation is required at this point in order for the district court to hear the plaintiffs' certification motion; the additional evidence on numerosity required by the district court has already been submitted to the court and the other class action prerequisites have already been ruled on by the court.

While we conclude that Zeidman and Youngelson may continue to urge class certification, however, we need not decide in this appeal whether these named plaintiffs are adequate class representatives under Rule 23(a)(4) for the purpose of representing their purported classes *on the merits.*

that *Geraghty* is mentioned or discussed in each of the four concurring and dissenting opinions in *Roper*, and despite its obvious relevance, *Geraghty* is not so much as *mentioned* even a single time in the Court's majority opinion in *Roper*.

Because the Court's opinion in *Roper* was handed down despite the Court's simultaneous decision in *Geraghty*, and because of the remarkable similarity between the facts in *Roper* and the facts of the case now before us, one might argue that this case should be governed by *Roper's* reliance on a cognizable interest in the certification question despite the broader dictate of *Geraghty*. Such an interpretation would be difficult to defend on any principled basis, however, for the Court made no attempt to distinguish the two cases and, in fact, the only distinction raised by the parties (that Geraghty's claim "expired" while that of the named plaintiffs in *Roper* was mooted by judgment on the merits) was entirely discounted. *Geraghty*, 445 U.S. at 401, 100 S.Ct. at 1211.

Even if we assume, however, that *Roper* does govern this case, we must conclude that the plaintiffs still have established their standing to appeal. As Justice Powell noticed in his dissent to the Court's decision in *Roper*, the Court at no point identified any actual economic interest in the certification question. *See* note 9

*supra.* As Justice Powell recognized, the Court seems to have rested the plaintiffs' standing on their bare *assertion* of a desire to shift to successful class litigants a portion of the fees and expenses incurred in the litigation. *See* 445 U.S. at 351 n.10, 100 S.Ct. at 1180 n.10. Having read the Court's decision in *Roper* (which was announced after the initial briefing in this appeal), the named plaintiffs herein make precisely that assertion in a supplemental brief. In particular, they complain that the district court by dismissing the case "precluded itself from considering the 'personal stake' of the named plaintiffs herein in achieving class certification, *including their interest in 'shifting' the litigation costs to other class members.*" Supplemental Brief of Plaintiffs-Appellants at 13 (emphasis added). Such an assertion was considered adequate to confer standing in *Roper*, and we perceive no reason why it would not also be adequate here.

11. Federal Rule of Civil Procedure 23(a) provides in pertinent part as follows:

 One or more members of a class may sue or be sued as representative parties on behalf of all only if . . . (4) the representative parties will fairly and adequately protect the interests of the class.

Since no class has yet been certified, we leave that issue to the district court. If and when the court certifies the classes which Zeidman and Youngelson seek to represent, the court should then determine "whether [these named plaintiffs] may continue to press the class claims or whether another representative would be appropriate." *Geraghty*, 445 U.S. at 407, 100 S.Ct. at 1214.

**4. May the merits of the plaintiffs' claims be reached at this stage?**

 Finally, we emphasize that the merits of the plaintiffs' case are not now at issue and, in fact, could not be reached at this stage of the litigation. A named plaintiff whose individual claim has been rendered moot may in no event argue the merits of the case before a class has properly been certified; prior to that time the plaintiff may at most argue the class certification question. *E. g., Geraghty*, 445 U.S. at 404, 100 S.Ct. at 1212.

**B. The Mootness Question**

 We now reach the decisive question behind the district court's dismissal of this action. As framed above, that issue is whether a purported but uncertified class action should be dismissed for mootness upon tender to the named plaintiffs of their personal claims, despite the existence of a timely filed and diligently pursued pending motion for class certification. We recognize, as did the district court, that a suit brought as a class action must as a general rule be dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no class has properly been certified. At least in some cases, however, this general rule must yield when the district court is unable reasonably to rule on a motion for class certification before the individual claims of the named plaintiffs become moot. We conclude that this is one such case. When, as here, the plaintiffs have filed a timely motion for class certification and have diligently pursued it, the defendants should not be allowed to prevent consideration of that motion by tendering to the named plaintiffs their per-

sonal claims before the district court reasonably can be expected to rule on the issue.

**1. *Sosna v. Iowa* and the Timing of the Class Certification Decision**

Our analysis begins with *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Sosna, an Iowa resident who desired a divorce but had resided in Iowa for less than one year, brought a class action challenging an Iowa residency requirement that limited state-court divorce jurisdiction to persons who had resided in Iowa for at least one full year. The district court certified a class composed of all Iowa residents who had resided in Iowa for less than one year and who were barred by the state's residency requirement from procuring a desired divorce in state court. A three-judge district court upheld the Iowa statute and Sosna thereupon appealed to the Supreme Court. However, by this time Sosna had resided in Iowa for more than one year and had procured a divorce in another state; therefore, as the Supreme Court noticed *sua sponte*, Sosna's personal claim was moot. Still the Court did not dismiss the entire action, but instead ruled on the merits of the class' claims.

The Court's decision to reach the merits of the case despite the mootness of Sosna's individual claim seems to have rested on two separate theories. First, the Court explained that the unnamed members of the class certified by the district court presented justiciable claims independent of that asserted by the named plaintiff. Had the suit been brought only on Sosna's behalf, the Court would have dismissed it as moot; once a class was certified, however, the unnamed class members "acquired a legal status separate from the interest asserted by [Sosna]." 419 U.S. at 399, 95 S.Ct. at 557. In essence, the act of certification brought the unnamed members of the class before the court for Article III purposes; so long as their claims were justiciable, the mootness of the original named plaintiff's claim would not require dismissal.

Second, the Court explained that the controversy in *Sosna* was one of that narrow

category of disputes that are saved from dismissal for mootness because they are "capable of repetition, yet evading review."[12] Although Sosna herself could not reasonably be expected to face the same residency bar in the future, it was clear that the state would continue to enforce the residency requirement against unnamed members of the class Sosna sought to represent. 419 U.S. at 399–400, 95 S.Ct. at 557–58. And, because any litigation challenging the Iowa residency requirement at issue would surely outlive the one-year period of the requirement, no individual plaintiff (either named or unnamed) could retain a justiciable claim "for the period necessary to see such a lawsuit to its conclusion." 419 U.S. at 400, 95 S.Ct. at 558. Therefore the underlying controversy would likely "escape full review at the behest of any single challenger," that is, the controversy was "capable of repetition, yet evading review." 419 U.S. at 401, 95 S.Ct. at 558.

 The Court's holding in Sosna does not mean, however, that certification of a class with justiciable claims will in all cases save a lawsuit from dismissal for mootness. In order to satisfy the requirements of Article III, the named plaintiffs must have a justiciable case or controversy both at the time the complaint is filed and at the time the class is certified by the district court, and the case must present a live controversy at the time it is reviewed an appeal. 419 U.S. at 402, 95 S.Ct. at 558–59. In this way the holding in Sosna can be reconciled with the general rule relied upon by the district court in this case. According to that rule, a lawsuit brought as a class action must be dismissed for mootness when no class has yet been certified and the personal claims of all named plaintiffs become moot; under the Sosna holding, certification would have saved the case from dismissal by bringing

the claims of the unnamed class members before the court, but only if certification had occurred while the named plaintiffs had justiciable claims, i. e., before the named plaintiffs' claims were rendered moot. In short, a lawsuit brought as a class action must present justiciable claims at each stage of the litigation; if the named plaintiffs' individual claims become moot before a class has been certified, no justiciable claims are at that point before the court and the case must as a general rule be dismissed for mootness.

 Of course, justiciable claims may be made by either named or unnamed (class) plaintiffs; a suit that at the outset is justiciable because of the live claims of named plaintiffs may at a later stage be justiciable because of the live claims of the unnamed plaintiffs contained in a certified class. Still, however, the class that takes the place of named plaintiffs for Article III purposes must ordinarily do so while the named plaintiffs have justiciable claims; the Court's holding in Sosna does not contemplate the maintenance of a lawsuit that otherwise would be dismissed for mootness, solely for the purpose of establishing a class of unnamed plaintiffs with justiciable claims. As Sosna demonstrates, therefore, whether the mootness of all named plaintiffs' personal claims requires the dismissal of a suit brought as a class action largely depends on the *timing* of the class certification decision: certification saves the suit from dismissal only if it occurs *prior* to the satisfaction or expiration of the named plaintiffs' claims.

2. The Relation Back Doctrine as an Exception to the General Rule

The Court recognized in Sosna that an approach which relies solely on the timing

12. The "capable of repetition, yet evading review" doctrine originated in the non-class action context, where it has been applied in a variety of situations. See, e. g., Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1974) (challenge by pregnant woman to state anti-abortion statute); Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) (challenge to conduct of completed state election); Carroll v. President & Commissioners, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968) (challenge to state court restraining order issued to halt protest rallies by plaintiffs); Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911) (challenge to short-term ICC orders which ordinarily would expire before Supreme Court review).

of the class certification decision may cause undue hardships in cases in which the named plaintiffs' individual claims become moot before the district court has a reasonable opportunity to certify a class; the Court suggested that in such cases the timing of actual certification may not be dispositive:

> There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to "relate back" to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

419 U.S. at 402 n.11, 95 S.Ct. at 559 n.11. This exception to the general rule relied upon by the district court in this case is typically designated as the "relation back doctrine." When applicable, it allows the district court a reasonable opportunity to rule on a pending motion for class certification despite the intervening mootness of the named plaintiffs' individual claims.[13]

The precise bounds of the relation back doctrine are unclear, for two very different interpretations of this passage from *Sosna* are possible. First, one might argue that the Court intended to allow certification to "relate back" to the filing of the complaint only in those cases in which the controversy is so transitory that no single named plaintiff could maintain a justiciable claim long enough to reach the class certification stage of the litigation. It is in such cases that *Sosna's* emphasis on the timing of certification works its greatest hardship; absent some exception to the general rule of *Sosna*, such transitory claims will never be certi-

fied, and absent certification the merits of the claims will never be reached. Controversies which are so transitory that no class can be certified before the claims of all original plaintiffs become moot are in effect "capable of repetition, yet evading review," and we note that the Court emphasized the importance of "the reality that otherwise the issue would evade review" in its brief discussion of the relation back doctrine. The Supreme Court has on two occasions applied the relation back doctrine to avoid the dismissal for mootness of a class action; both cases, which are discussed in more detail below, fit within this narrow interpretation of the doctrine. *See Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Swisher v. Brady*, 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1977).

However, a second interpretation arguably follows from cases subsequent to *Sosna* in which the Court has underplayed the importance of the "capable of repetition, yet evading review" doctrine in the class action context. On two occasions the Court has explained that while *Sosna* involved a controversy admittedly within this category, justiciability in that case was adequately established by the live claims of the unnamed members of the certified class—*i., e.,* on the basis of the first theory enunciated in *Sosna*. *See United States Parole Commission v. Geraghty, supra*, at 398 n.6; *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 752–56, 96 S.Ct. 1251, 1258–60, 47 L.Ed.2d 444 (1976). As the Court explained in *Franks* :

> Given a properly certified class action, *Sosna* contemplates that mootness turns on whether, in the specific circumstances of the given case at the time it is before this Court, [there exists] an adversary

---

**13.** Cases discussing the relation back doctrine assume that the district court will in fact rule on class certification within the reasonable period of time allowed the court by that doctrine. A different question may arise, therefore, where the court itself unreasonably delays a ruling on class certification. However, we recently held in *Cruz v. Hauk*, 627 F.2d 710, 717 (5th Cir. 1980), that the court's unreason-

able delay could not be used to justify dismissal for mootness of "an action that was initially filed as a class action, that has been treated as such by all concerned, and that has been diligently litigated for more than ten years." 627 F.2d at 716–17. Accordingly, we related the certification decision in *Cruz* back to the date by which it reasonably should have been made.

relationship sufficient to [assure that concrete adverseness which sharpens the presentation of issues]. In this case, that adversary relationship obviously obtained as to unnamed class members [all black applicants for employment with defendant who were denied such employment]
. . . .

424 U.S. at 755–56, 96 S.Ct. at 1260. Since, as these cases indicate, the proper focus of a mootness inquiry in the class action context is on the adversary relationship, and since an adversary relationship sufficient for Article III purposes can arise by virtue of the unnamed class members' justiciable claims whether or not such claims are "capable of repetition, yet evading review," one might argue that the relation back doctrine is applicable whether or not the controversy is so transitory that no single named plaintiff could maintain a justiciable claim long enough to reach the class certification stage of the litigation. So long as the claims of the unnamed class members are presented in an adversary relationship sufficient to assure "that concrete adverseness which sharpens the presentation of issues," this broader reading of the relation back doctrine would allow. the district court a reasonable time to rule on the certification question despite the intervening mootness of the named plaintiffs' claims. In essence, the claims of the unnamed class members would in all such cases be brought before the court for Article III purposes at least for such a provisional period of time as the

court reasonably would require to consider certification. This "provisional" Article III status would not depend on a finding that the controversy was so transitory that absent the doctrine no class could ever be certified, but would instead be available whenever the suit presented an adversary relationship sufficient to meet the requirements of Article III. *Cf. Deposit Guaranty National Bank v. Roper, supra,* 445 U.S. at 342, 100 S.Ct. at 1175–76 (Stevens, J., concurring) (arguing that a proper class action complaint should in all cases bring the members of the absent class before the court for Article III purposes until a final determination has been made that the class may not be certified).

3. The Applicability of the Relation Back Doctrine in this Case

▆ In this case we need not consider whether or to what extent a broader reading of *Sosna's* relation back doctrine should be accepted.[14] The answer in the case now before us follows even from the narrower interpretation of that doctrine, that is, from its application to controversies so transitory that no single named plaintiff can maintain a justiciable claim long enough to reach the class certification stage of the litigation.

Shortly after the Supreme Court's decision in *Sosna,* the Court decided a case that precisely fit within the class of transitory controversies that concerns us today. In *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), a state prisoner

---

14. This broader reading of the relation back doctrine was arguably adopted by this court in *Cruz v. Hauk,* 627 F.2d 710, 717–18 (5th Cir. 1980). *Cruz* was a class action suit brought by prisoners of a county jail in Texas; more than one year after the filing of a motion for class certification, the district court denied the motion and dismissed the case for mootness when the named plaintiffs were released from jail, despite the fact that at least one named plaintiff was incarcerated at the time the motion for class certification was made and for over six months thereafter. We reversed the district court's denial of certification and dismissal of the case, and suggested as one alternative basis for our decision the relation back doctrine enunciated in *Sosna.* Since our discussion of the relation back doctrine did not rely on the fact that absent the doctrine no class could

ever have been certified in this controversy, our decision might be read as eliminating that requirement and thereby adopting the broader interpretation of the relation back doctrine. However, our treatment of the relation back doctrine in *Cruz* must be read in the context of an alternative basis for our holding in that case: we found that the individual claims of the named plaintiffs were "capable of repetition, yet evading review." Since this characterization is the basis of the narrower interpretation of the relation back doctrine, we do not think that our brief treatment of that doctrine in *Cruz* should be read to adopt the broader reading of the doctrine. We note, finally, that *Cruz* relied on a third alternative basis as well, that is, the courts' unreasonable delay in ruling on certification. *See supra* at note 13.

brought a class action suit challenging the pretrial detention of persons held for trial under a prosecutor's information. By the time the case reached the Supreme Court, the named defendants had long since been convicted and were no longer in custody awaiting trial; therefore, in accordance with *Sosna*, the case had to be dismissed absent a properly certified class. The district court had indeed certified a class, but there was nothing in the record to indicate that the named plaintiffs were, as *Sosna* ordinarily would require, still in pretrial detention at the time the district court certified the class. However, the Court held that because of the transitory nature of the controversy, *Sosna* did not require that the named plaintiffs have justiciable claims at the time of certification:

> Such a showing ordinarily would be required to avoid mootness under *Sosna*. But this case is a suitable exception to that requirement. The length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial. It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class.

420 U.S. at 110–11 n.11, 95 S.Ct. at 861 n.11 (citations omitted).

The Supreme Court again applied the relation back doctrine in *Swisher v. Brady*, 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1977). *Swisher* was a class action brought by several minors who had cases pending in a Maryland juvenile court; the suit challenged under the Double Jeopardy Clause a Maryland procedural rule which allowed the state to file exceptions to findings made by masters of the juvenile court. Before the class had been certified by the district court, the individual claims of all named plaintiffs had been rendered moot because the state had either withdrawn its exceptions or completed the adjudicatory process in each case. Noting the apparent mootness problem *sua sponte*, the Supreme Court approved the district court's certifica-

tion of the class by applying the relation back doctrine of *Sosna*. The doctrine was applicable, according to the Court, because of "the rapidity of judicial review of exceptions to masters' proposals," which created mootness questions before the district court reasonably could be expected to rule on certification. As the Court noted, the rapid judicial review of exceptions created mootness problems not only with respect to the named plaintiffs, but "even perhaps with respect to a series of intervening plaintiffs appearing thereafter." 438 U.S. at 213–14 n.11, 98 S.Ct. at 2705 n.11.

One might argue that the narrower reading of the relation back doctrine does not fit the facts of this case, for *Gerstein* and *Swisher*—the only cases in which the Supreme Court has applied this doctrine—rest on the *transitory nature of the plaintiffs' substantive claims*. *Gerstein*'s claim as to the state's use of pretrial detention was bound to expire when he was either released or convicted; given the ordinarily brief period of a claim based on pretrial detention, *Gerstein*'s or any other individual prisoner's claim was almost certain to become moot before a class could be certified. Likewise, the named plaintiffs' double jeopardy claims in *Swisher* expired upon the termination of the relatively brief juvenile proceeding they sought to challenge. Mootness in both cases followed from the nature of the claim; where a plaintiff seeks to challenge a form of confinement or proceeding which is ordinarily brief, his substantive claim must necessarily expire in a short period of time. This case, by contrast, does not involve claims which by their nature are transitory, for the named plaintiffs' claims for damages under the federal securities acts did not expire with the mere passage of time. Instead, the plaintiffs' claims have been rendered moot by *purposive action of the defendants*—in particular, by the defendants' full tender of the plaintiff's individual claims. In short, the claims asserted in *Gerstein* and *Swisher* naturally and inevitably expired, while Zeidman's and Youngelson's claims were satisfied by act of the defendants.

This distinction is arguably a significant one. Because of the natural expiration of the claims asserted in *Gerstein* and *Swisher*, it was doubtful in those cases that *any* plaintiff could have retained a justiciable claim long enough to reach the certification stage of the litigation. Whether any plaintiff in Zeidman's and Youngelson's class could reach that stage is, however, by no means as certain. While the defendants tendered these named plaintiffs' claims, they are not bound to do so in the future; it is at least conceivable, therefore, that the defendants will tire of this tactic (or run out of funds) and allow some subsequent plaintiff to procure a ruling on class certification.

However, while we recognize that the named plaintiffs in this case have not presented claims which by their nature are so transitory that no single named plaintiff with such a claim could maintain a justiciable case long enough to procure a decision on class certification, we believe that the result should be no different when the defendants have the ability by tender to each named plaintiff effectively to prevent any plaintiff in the class from procuring a decision on class certification. By tendering to the named plaintiffs the full amount of their personal claims each time suit is brought as a class action, the defendants can in each successive case moot the named plaintiffs' claims before a decision on certification is reached. A series of individual suits, each brought by a new named plaintiff, could individually be "picked off" before class certification; as a practical matter, therefore, a decision on class certification could, by tender to successive named plaintiffs, be made just as difficult to procure in a case like the one now before us as it was in *Gerstein* and *Swisher*. *Cf. Deposit Guaranty National Bank v. Roper, supra,* 445 U.S. at 341, 100 S.Ct. at 1175 (Rehnquist, J., concurring) (suggesting that *Roper* —in which defendants had tendered the named plaintiffs' individual claims—"fits within a 'narrow class of cases' where a contrary rule would lead to the 'reality' that 'otherwise the issue would evade review' ").

We recognize, of course, that this tactic would not work for all defendants in all suits brought as class actions. Often there would be too many named plaintiffs, or the individual claim of each would be too great, to make such a tactic financially feasible. But the difficulty inherent in any use of this tactic does not make it acceptable. The fact remains that in those cases in which it is financially feasible to pay off successive named plaintiffs, the defendants would have the option to preclude a viable class action from ever reaching the certification stage. This result is precisely what the relation back doctrine of *Sosna, Gerstein* and *Swisher* condemns, and we see no difference when it is caused by the defendant's purposive acts rather than by the naturally transitory nature of the controversy.

We find support for our conclusion in the decisions of several other circuits. The Court of Appeals for the Seventh Circuit has in fact reached the precise question now before us. In *Susman v. Lincoln American Corp.,* 587 F.2d 866 (7th Cir. 1978), *cert. denied,* 445 U.S. 942, 100 S.Ct. 1336, 63 L.Ed.2d 775 (1980), plaintiffs who sought damages for securities violations had filed a suit as a class action and timely moved for certification; while the motion was pending, the defendants tendered to the named plaintiffs the full amount of their personal claims and moved to dismiss the entire action for mootness. The district court dismissed the action, but the court of appeals reversed. The court of appeals recognized that ordinarily a suit brought as a class action must be dismissed for mootness when the claims of all named plaintiffs become moot and no class has yet been certified. The court also recognized that *Sosna's* relation back exception had not been applied by the Court in the context of mootness caused by the defendants' tender, but had instead been applied when "the nature of the complaint was such that the mere passage of time would usually make the individual plaintiffs' complaint moot." 587 F.2d at 870. Still the court held that the action could not be dismissed for mootness before the plaintiffs' pending motion for class certification was heard. The court explained:

[J]ust as necessity required the development of the relation back doctrine in cases where the underlying factual situation naturally changes so rapidly that the courts cannot keep up, so necessity compels a similar result here. If the class action device is to work, the courts must have a reasonable opportunity to consider and decide a motion for certification. If a tender made to the individual plaintiff while the motion for certification is pending could prevent courts from ever reaching the class action issues, that opportunity is at the mercy of a defendant, even in cases where a class action would be most clearly appropriate.

*Id.*

Although no other circuit appears to have considered the effect of a defendant's tender on a pending motion for class certification, several courts have considered the effect of a defendant governmental agency's voluntary performance of a specific action demanded in the lawsuit. In each of these cases the court has held that the defendant could not prevent a decision on the plaintiff's motion for certification by rendering the individual plaintiff's demand for injunctive relief moot before the court had reasonably been able to consider the motion. *See DeBrown v. Trainor*, 598 F.2d 1069, 1072 (7th Cir. 1979) (eligibility for food stamps restored by defendant state welfare agency); *White v. Mathews*, 559 F.2d 852, 857 (2d Cir. 1977) (administrative hearing and decision granted by defendant Department of Health, Education and Welfare); *Basel v. Knebel*, 551 F.2d 395, 397 n.1 (D.C.Cir.1977) (eligibility for food stamps restored by defendant state agency). *Cf. Frost v. Weinberger*, 515 F.2d 57, 63–64 (2d Cir. 1975) (summary judgment in plaintiffs' favor, in suit challenging denial of Social Security survivors' benefits, rendered before class was properly certified). Although these cases do not raise precisely the same issue as that faced in this case and in *Susman*, the same concern underlies them. As the Court of Appeals for the Second Circuit explained in *Mathews*, refusal to certify the class "would mean that the [agency] could avoid judicial scrutiny of its procedures by the simple expedient of granting hearings to plaintiffs who seek, but have not yet obtained, class certification." 559 F.2d at 857.

We conclude that a suit brought as a class action should not be dismissed for mootness upon tender to the named plaintiffs of their personal claims, at least when, as here, there is pending before the district court a timely filed and diligently pursued motion for class certification. Because this case need not be dismissed for mootness, and because the named plaintiffs are "adequate class representatives" under Fed.R.Civ.P. 23(a)(4) at least for the limited purpose of urging their pending motion for class certification, the district court should now proceed to a decision on that motion. If the court grants the motion and certifies the plaintiffs' purported classes, the court should then consider whether under Rule 23(a)(4) Zeidman and Youngelson may urge the merits of the classes' claims or whether, instead of these named plaintiffs, "another representative would be appropriate." *See* Part IV–A–3 of this opinion, *supra*. We reverse the judgment of the district court and remand this case to the district court for proceedings consistent with this opinion.

REVERSED and REMANDED.