**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0046n.06
Filed: January 22, 2009

No. 07-6033

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CYNTHIA TURNAGE | ) | |
| | ) | |
|     Plaintiff, | ) | |
| and | ) | |
| | ) | |
| BRET FREEMAN | ) | |
| | ) | ON APPEAL FROM THE |
|     Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
|       v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| NORFOLK SOUTHERN CORPORATION; | ) | |
| NORFOLK SOUTHERN RAILWAY COMPANY | ) | |
| | ) | |
|     Defendants-Appellees. | ) | |

BEFORE: SILER, BATCHELDER, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. Cynthia Turnage and Bret Freeman sued Norfolk Southern for private nuisance caused by a train derailment and subsequent chemical spill, and sought to certify a class. The district court denied their motion for class certification because the plaintiffs did not demonstrate that the number of people who had been harmed by the spill, but not fully compensated, was sufficiently numerous to make joinder impracticable. Freeman now appeals. Because the district court did not abuse its discretion when it found that Freeman failed to demonstrate impracticability of joinder, we affirm.

**I.**

On Sunday, September 15, 2002, at approximately 11:20 a.m., a train owned and operated by Norfolk Southern Corporation and its subsidiary Norfolk Southern Railway ("Norfolk Southern") derailed in Knox County, Tennessee. A tanker filled with sulfuric acid leaked, forming a cloud of water and sulphuric acid above portions of Blount and Knox County. The Knox County emergency management agency ordered a mandatory evacuation of residents living within a 1.3-mile radius of the derailment site and a voluntary evacuation of residents living within a 3-mile radius. Norfolk Southern dispatched emergency hazardous material cleanup crews to the accident site to neutralize the leaking sulphuric acid. The evacuation was partially lifted at 9:00 p.m. on Monday and entirely lifted at 7:00 a.m. on Tuesday, September 17.

Following the derailment, Norfolk Southern set up claim centers to allow those affected by the accident to receive immediate reimbursement for out-of-pocket expenditures for food, clothing, lodging, and other evacuation-related expenses. According to Norfolk Southern's records, on which Freeman has chosen to rely, there were 963 households located in the 1.3-mile radius, of which 827 households received some form of compensation, and an additional 6047 in the 3-mile radius, of which 1037 received compensation.

Freeman and his family lived approximately 1.1 miles from the derailment site. They evacuated their home without enough time to pack and stayed for several days with Freeman's in-laws. Despite the end of the evacuation, which was widely announced through broadcast and print media, Freeman and his family did not return home until Wednesday. As a result, Freeman was

unable to work Sunday through Wednesday and incurred out-of-pocket expenses for food and personal items. He also partially drained and refilled his swimming pool and power washed his house, boats, and cars after his return.

Cynthia Turnage, the original plaintiff in this suit, filed a class action lawsuit against Norfolk Southern on June 3, 2003, in the Circuit Court for Blount County, Tennessee. Turnage sought compensatory and punitive damages on behalf of a class of all persons and businesses who suffered economic losses as a result of the train derailment. Norfolk Southern subsequently removed the case to federal court. Turnage amended the complaint on August 21, 2003, adding Bret Freeman and Donn Steltzer as additional class representatives. Donn Stelzer died on August 26, 2003, and was removed as a plaintiff.

Plaintiffs filed their first motion for class certification on August 21, 2003. On June 21, 2004, the district court denied the motion without prejudice as premature. Plaintiffs filed a renewed motion for class certification on March 30, 2005. The matter was referred to a magistrate, who issued a report and recommendation that the motion be denied because the plaintiffs had not proved that the class was so numerous as to make joinder impracticable. First, the magistrate noted that the plaintiffs "produced little more than sheer speculation to show that residents in [the affected] area, other than the named plaintiffs, ha[d] in fact suffered damages as a result of the derailment" or that "those residents who ha[d] already received compensation . . . ha[d] not been fully compensated for their injuries." Second, the magistrate noted that "because the potential class members are in such a limited geographical area, joinder of any potential plaintiffs . . . would be relatively easy." The

district court accepted the magistrate's report and recommendation in whole, and issued an order on November 15, 2005, denying class certification. The parties thereafter entered into a stipulated agreement that dismissed all claims by Cynthia Turnage and Freeman's claim with respect to punitive damages.

Throughout the case, the plaintiffs filed multiple amended complaints, renewed motions, and clarifying motions. Many of these filings offered new characterizations of the class that the plaintiffs purported to represent, causing the class definition to go through as many as seven iterations during the course of the litigation. The magistrate, primarily relying on the plaintiffs' third amended complaint, considered and rejected a class defined as:

> All persons (1) who evacuated their real property and/or "sheltered in place," and/or were prevented from returning to their homes and (2) who suffered all available nuisance damages, including economic losses and inconvenience, as a result of, and within a three mile radius from, the derailment and toxic spill.

Freeman renewed the motion to certify a class on February 14, 2007, less than a week before the case was set for trial on the issue of his damages. The class Freeman sought to certify at that point was "all persons who were evacuated from the surrounding area." The court held a hearing two days later and denied the motion, referring back to the reasoning in the magistrate's report and recommendation. On July 25, 2007, following a bench trial, the district court entered an order of final judgment awarding Freeman $3480. Freeman now appeals the court's refusal to certify the class defined in his last motion to certify.

**II.**

The district court did not abuse its discretion when it found that Freeman did not meet his burden to demonstrate impracticability of joinder. The court properly denied class certification for failure to meet Federal Rule of Civil Procedure 23(a)(1), which requires the plaintiff to demonstrate affirmatively the impracticability of joinder as a prerequisite to certification. *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Two factors weigh strongly against Freeman: first, the ease of identifying potential plaintiffs due to their tight geographical proximity to each other and the discrete nature of the harm, and second, the speculative nature of the class size. The district court has broad discretion to decide whether to certify a class, *id.*, and we do not disturb the district court's determination here.

Unlike some proposed classes that are spread throughout a city, state, or even the entire country, every potential plaintiff in this case lives within a three-mile radius. And unlike some harms that take place over long spans of time and require years to materialize, the harm in this case occurred at one brief point in time and was immediately obvious in its effects. Regardless of the actual number of plaintiffs in this case, their proximity to each other and the discrete and obvious nature of the harm make identifying and contacting them relatively easy. Federal Rule of Civil Procedure 23(a)(1) requires as a prerequisite to class action that "the class [be] so numerous that joinder of all members is impracticable." While this requirement is commonly referred to as a "numerosity" requirement, the real issue is whether the plaintiff seeking class certification has demonstrated impracticability of joinder. *In re American Medical Systems*, 75 F.3d at 1079. While large numbers may, in many cases, indicate impracticability of joinder, numbers are not a perfect

predictor. Rather than naming a specific number, Rule 23 places the size of the class in the context of actual impracticability of joinder. When considering whether joinder would be practicable in a given case, courts may consider "ease of identifying members and determining addresses, ease of service on members if joined, [and] geographical dispersion" among other things. *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 74 (D.N.J. 1993).

The speculative nature of Freeman's estimates further demonstrates that the district court did not abuse its discretion when it found that the class was not sufficiently numerous to merit certification. In his argument regarding numerosity, Freeman relied on Norfolk Southern's statement that the 1.3-mile mandatory evacuation radius covered 963 households and that the 3-mile voluntary evacuation radius covered an additional 6,047 households. Of these, 827 of the households in the mandatory evacuation zone and 1,037 in the voluntary evacuation zone were compensated by Norfolk Southern's voluntary efforts. Freeman offered what he believed to be a reasonable estimate of three people per household in order to conclude that as many as 15,000 people had yet to be compensated.

This court has consistently held that "[t]here is no strict numerical test for determining impracticability of joinder." *In re American Medical Systems*, 75 F.3d at 1079. The court has also said that "[w]hen class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone." *Id.* Nonetheless, "impracticability of joinder must be positively shown, and cannot be speculative." *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005). Several facts of this case weigh against relying solely on the seemingly large number of

potential class members: first, Freeman's numbers necessarily encompass a larger group than he claims to represent, and second, Freeman has not produced concrete evidence of numerosity despite having had ample opportunity to do so.

Although he states a large number based on every household potentially affected by the derailment, Freeman does not purport to represent every person living within the three-mile radius. The class definition advanced by Freeman throughout this case has been a moving target. Whether we look to the definition advanced in Freeman's most recent motion to certify or the definition considered by the magistrate, the result is the same. Both definitions make clear that Freeman attempts to represent a sub-class of residents of the three-mile radius who experienced some appreciable damage from the derailment. As the magistrate observed, Freeman has not made any effort to show that the residents he includes in his numbers suffered actual damage. With regard to his most recent definition, which includes all persons evacuated from the surrounding area, Freeman does not say how many of the 15,000 supposedly uncompensated residents actually evacuated. Those who did not evacuate must be excluded from the class and therefore from Freeman's estimated numbers. With regard to the definition considered by the magistrate, which includes evacuees and non-evacuees who were harmed in various ways, Freeman's class does not include those residents of the three-mile radius who suffered little to no damage. The omitted group might include those who were out of town during the evacuation, those in the voluntary zone who chose not to evacuate and whose daily routines were little disturbed, and those who were able to relocate temporarily to other quarters with little inconvenience or expense.

The Fifth Circuit offers helpful analysis of a situation where a would-be class representative states a large number, but that number includes individuals within the proposed class mixed together indiscriminately with others not within the proposed class. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981). *Zeidman* involved a suit by investors who alleged that several companies issued false information in order to depress the value of certain securities during a pending tender offer. *Id.* at 1033. In order to establish numerosity, the plaintiffs asserted that nearly six million shares were sold during the relevant dates. *Id.* at 1034. The Fifth Circuit noted the reasonableness of the plaintiffs' assumption that "any class composed of the sellers of a nationally traded security during a period in which hundreds of thousands or even millions of shares of the security were traded must necessarily be so numerous that joinder of all members is impracticable," and the court commented that such numbers normally would establish numerosity. *Id.* at 1039 (internal quotation marks omitted). Yet that court found the class size in that case to be speculative. First, the court noted that certain categories of investors were excluded from the class, meaning the plaintiffs' aggregate numbers necessarily referred to a group that was larger than the group they purported to represent. *Id.* at 1040. Second, the court noted that the trial court gave the plaintiffs a chance to submit additional evidence prior to rendering a final decision. *Id.* Given these facts, the appellate court determined that the trial court had not abused its discretion by refusing to certify a class.

The plaintiff in the instant case cites large numbers, but his numbers include not just the members of his proposed class but every resident of the three-mile radius. Without "some evidence

of the size either of the excluded group or of the remaining class," *id.*, Freeman's evidence of numerosity remains speculative. Furthermore, Freeman had ample opportunity during the course of this protracted litigation to supply concrete evidence of numerosity if there were any such evidence to be had. The magistrate's recommendation and report alerted Freeman to his evidence problem more than six weeks before the district court issued its order. More than a year passed before Freeman again renewed his motion to certify. Given the close geographical proximity of supposedly thousands of class members, the task of gathering concrete evidence of numerosity should not have been difficult. Yet Freeman did not submit evidence to the district court of even one additional person who wished to seek a legal remedy against Norfolk Southern. Therefore the district court did not abuse its discretion when it found that the evidence of numerosity was too speculative to merit certification.

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.