In the

# United States Court of Appeals
## for the Fifth Circuit

---

m 01-51120

---

ERNEST GRANT,
BY HIS GUARDIAN, FAMILY ELDERCARE,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiff-Appellant,

VERSUS

DON R. GILBERT,
IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER
OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION;
KAREN HALE,
IN HER OFFICIAL CAPACITY AS THE COMMISSIONER
OF THE TEXAS DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION;
AND
ERIC M. BOST,
IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER
OF THE TEXAS DEPARTMENT OF HUMAN SERVICES,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Western District of Texas

---

March 24, 2003

Before GARWOOD, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Ernest Grant, a mentally retarded nursing home resident, sued three Texas state officers in their official capacities for failing to provide him with adequate information about community-based placement alternatives to nursing home care. Grant claims that without this information, he and others similarly situated are unable to make fully informed decisions regarding their living options. Before considering Grant's motion for class certification, the district court found that Grant lacked standing. Because Grant since has applied for, and is now receiving, community-based care, we dismiss the appeal as moot, concluding that Grant likewise is ineligible to proceed as class representative.

I.

Congress passed the Nursing Home Reform Amendments to "quell overutilization of nursing home care for those who are not in need of institutionalization." *Rolland v. Cellucci*, 52 F. Supp. 2d 231, 234 (D. Mass. 1999). The NHRA creates a "Preadmission Screening and Annual Resident Review" ("PASARR") process by which an appropriate state agency, following federal statutes and regulations, assesses the level of care required by "mentally ill and retarded individuals . . . who are admitted to nursing facilities . . . ." 42 U.S.C. § 1396r(e)(7)(A)(i). The statute also requires that the state "inform the resident of the institutional and noninstitutional alternatives covered under the State plan for the resident." 42 U.S.C. § 1396r(e)(7)(C)(i)(I).

The state's annual reviews in 1991, 1992, and 1993 revealed that Grant did not need nursing home care, that he did need "specialized services," and that he was not competent. Because Grant was a "long-term resident," these findings entitled him to choose whether to remain in the nursing facility or to opt for an alternative placement. 42 U.S.C. § 1396r(e)-(7)(C)(i). Grant claims that, in each of those years, the state failed in its statutory obligation to provide him with sufficient information about the placement options available to him, and therefore prevented him from making a reasoned choice. In particular, he claims that the state should have provided him with more information about its Home and Community Services-OBRA (HCS-O) waiver program, through which it provides community-based alternatives to nursing home care for developmentally disabled individuals.

The state provided Grant with a letter, called a "CHO-1" letter, informing him that he had a choice to (1) remain in the nursing home or (2) select a community-based placement. Grant, who claims to have an IQ of about 24, did not have a legal guardian at the time. The state sent the letter directly to him, containing a three-page attachment explaining community-based placements, including the HCS-O waiver program, informing Grant that the "1915(c) Medicaid waiver for mentally retarded clients provides in-home and out-of-home services for a limited number of SSI eligible mentally retarded clients who qualify for ICF/MR institutional care. Available in 15 locations."

Grant claims this language is too vague and legalistic to satisfy the state's obligation, under the statue and federal regulations, to provide him with information about his alternatives to remaining in a nursing home. He also alleges that a separate federal statute, 42 U.S.C. § 1396n(c)(2)(C), required the state, when it initially found him eligible for nursing home

care and placed him in the nursing facility, to provide him with information about community-based alternatives.

Grant seeks, for himself and others similarly situated, information regarding community-based placements, a declaration of retroactive eligibility, and an injunction requiring the state to provide access to waiver services. Following Grant's motion for class certification, the court, *sua sponte*, became concerned that Grant lacked standing, because he never had applied to the HCS-O program. Grant's suit ultimately was dismissed without prejudice, with the provision that he could re-file his complaint later if he applied for the waiver program and was denied. The court also denied his class certification motion without reaching the merits.[1] Grant appeals the decision that he lacks standing.

Before oral argument in this appeal, Grant applied for, and began receiving, waiver services.[2] He concedes that his claims are moot as to his own asserted injury, but he contends he still may pursue the claims on behalf of the proposed class. He argues that should we conclude, contrary to the decision of the district court, that he had standing when he sued and that, under *United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980), we should remand for reconsideration of his class certification motion. Although we agree with Grant

that the district court erred in stating that he lacks standing to pursue one of his informational claims, we nevertheless dismiss the appeal as moot, finding *Geraghty* inapposite.

## II.

Standing, as "an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), determines the courts' "fundamental power even to hear the suit." *Ford v. NYLCare Health Plans, Inc.*, 301 F.3d 329, 333 (5th Cir. 2002) (citation omitted), *petition for cert. filed*, 71 U.S.L.W. 3489 (Nov. 22, 2002) (No. 02-1042). If Grant did not have standing when he sued, whether the expiration of his claims makes him ineligible to proceed as class representative becomes, for lack of better description, a moot issue.

Regarding Grant's standing as to his informational claims, the district court stated that "[b]ased on the record and the pleadings on file, the Court cannot agree with plaintiff's contention that he has not received adequate notice and information from the defendants regarding the HCS-O waiver program." The court then determined that Grant lacked standing to seek eligibility and waiver services relief, because he had never applied for HCS-O services. The court dismissed the case, stating that Grant could refile his complaint if he applied for waiver services and was rejected.

## A.

The court erred in holding Grant lacked standing to bring his § 1396r(e)(7)(C)(i)(I) informational claim. The adequacy of the information provided by the CHO-1 letter relates to the merits of Grant's suit, not his standing, so the decision to address the merits as part of the

---

[1] The order states that the district court "expressly declines addressing the issue of whether class certification is proper," noting that it "simply cannot intervene in the absence of actionable injury and standing to sue."

[2] Grant's enrollment in the Mental Retardation Local Authority (MLRA) program, an HCS-O program, was approved December 31, 2002.

standing inquiry was premature.[3] "This reasoning misconstrues the purpose and elements of standing. 'In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.' *Warth v. Seldin*, 422 U.S. 490, 498 (1975). It is inappropriate for the court to focus on the merits of the case when considering the issue of standing." *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1385 (5th Cir. 1986) [4]

Grant, as the party invoking federal jurisdiction, bears the burden of establishing the three elements of Article III standing. *Lujan*, 504 U.S. at 561. First, he must show that he has "suffered an 'injury in fact'SSan invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent not conjectural or hypothetical." *Id.* at 560. He also must demonstrate a causal connection between his injury and defendants' conduct, and a "likely" probability that his injury will be redressed by a favorable decision. *Id.* at 560-61.

Grant has sufficiently alleged an injury-in-fact under § 1396r(e)(7)(C)(i)(I), which requires the state to inform residents no longer in need of nursing facility services of the in-stitutional and noninstitutional living alternatives covered under the state waiver plan.[5] The state sent Grant a CHO-1 letter in 1991, 1992, and 1993, after he was determined to have met the requirements of § 1396r(e)(7)(B). The state was not required to provide Grant a letter in 1994 and 1995 after he was deemed to require nursing facility care. In 1996, the NHRA's requirement for annual assessments of residents was repealed.[6] So far as we can tell, the state has not been obligated to provide Grant information since 1993.

The "inability to obtain information" required to be disclosed by statute constitutes a sufficiently concrete and palpable injury to qualify as an Article III injury-in-fact. *Fed. Election Comm'n v. Atkins*, 524 U.S. 11, 21 (1998). Section § 1396r(e)(7)(C)(i)(I), however, entitles *only* those nursing care residents satisfying the conditions of subparagraph B to the information Grant claims he has been denied.[7] Grant has shown

---

[3] The district court did not address whether the information (or lack thereof) given to Grant during his admittance to the nursing facility satisfied the requirements of § 1396n(c)(2)(C).

[4] After reviewing the pleadings and the remainder of the record, the district court found the CHO-1 letters provided "adequate" information. Because, however, the entire case, including the informational claims, was dismissed without prejudice, we do not construe the disposition of Grant's informational claims as a decision on the merits.

[5] Defendants do not dispute that Grant has a private right of action under § 1396r(e)(7)(C)(i)(I) of the NHRA. Therefore, we assume, without deciding, that Grant has stated a claim. *Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 220 (5th Cir. 1984). At least two courts have determined that § 1396r(e)(7)(C) creates a private right of action. *Rolland v. Romney*, 318 F.3d 42, 51-56 (1st Cir. 2003); *Martin v. Voinovich*, 840 F. Supp. 1175, 1197-1201 (S.D. Ohio 1993).

[6] Change in Medicaid Nursing Facility Resident Review Requirements, Pub. L. No. 104-315, 110 Stat. 3824 (1996).

[7] *See Selden*, 422 U.S. at 500 ("The standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in

(continued...)

4

that he was entitled to state-provided information from 1991 to 1993. But because he seeks only declaratory and injunctive relief, he must "demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) (citation omitted). His failure to allege that he currently meets the requirements of subparagraph B suggests that any abstract informational injury as contemplated by *Atkins* is not continuous.

Nevertheless, Grant alleges that the state's failure to provide adequate information from 1991 to 1993 has inhibited him from making an informed decision regarding whether to apply for waiver services. Indeed, an affidavit by a supervisor of state employees who make eligibility determinations confirms that Grant was eligible to apply for waiver services when he sued. Though his right to information allegedly was infringed by the state only from 1991 to 1993, the injury is accompanied by "continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). To decide that Grant lacks informational standing would require others in his position to apply for services before obtaining information, a result that, in his words, puts the cart before the horse.

---

[7](...continued)
the plaintiff's position a right to judicial relief."). In other words, a claimed informational injury must "arguably [falls] within the zone of interests to be protected by the statute . . . in question." *Atkins*, 524 U.S. at 20 (internal citations omitted). The NHRA arguably is designed to provide people like Grant and their guardians sufficient information to make reasoned decisions about which alternative form of care they should select.

Grant raises a second informational injury claim under § 1396n(c)(2)(C), contending that, during his admittance to the nursing care facility in 1989, the state failed to provide him sufficient information regarding alternative residential placements. A Medicaid waiver shall not be granted unless the States provides assurances that

> such individuals who are determined to be likely to require the level of care provided in a hospital, nursing facility, or intermediate care facility for the mentally retarded are informed of the feasible alternatives, if available under the waiver, at the choice of such individuals, to the provision of inpatient hospital services, nursing facility services, or services in an intermediate care facility for the mentally retarded.

42 U.S.C. § 1396n(c)(2)(C).

We agree with defendants that, at most, the plain language of § 1396n(c)(2)(C) affords a right of information only for waiver applicants. In *Wood v. Tompkins*, 33 F.3d 600, 608 (6th Cir. 1994), the court noted that under § 1396n(c)(2), "states *must* provide the various enumerated assurances in order to obtain a home care waiver." *Id.* (emphasis in original). In 1989, Grant was admitted to the nursing care facility; he has not alleged that he applied for waiver services then or at any time before the pendency of this appeal. This deprives him of standing.

### B.

Grant also lacks standing to seek declaratory and injunctive relief for a determination of eligibility and state-provided waiver services. In his complaint, he appears to assume that, because he did not exercise his

choice in 1991, 1992, or 1993, he and the other putative class members became ineligible for the HCS-O waiver program. As we have said, he remained eligible to apply for waiver services after 1993, an option he exercised following the district court's dismissal. Given that he could have been admitted to a waiver program at the time he sued, he did not suffer an injury redressable by a judicial determination of eligibility or an injunction requiring the state to provide him access to the HCS-O program. *Lujan*, 504 U.S. at 563.

### III.

Grant concedes that his move to a community-based waiver program renders his claims moot. We turn to whether he nevertheless maintains a case in controversy in his right to represent the proposed class on the § 1396r(e)(7)(C)(i)(I) claim, the only cause of action as to which he originally had standing. As a general rule, "a purported class action becomes moot when the personal claims of all named plaintiffs are satisfied and no class has been properly certified." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1045 (5th Cir. Unit A July 1981). If this rule applies, Grant's motion for class certification, which the district court denied after it partially erred in determining that he lacked standing, is moot in light of the expiration of his informational claim.

Grant argues that *Geraghty* establishes a bright-line exception that permits a named plaintiff whose claims have expired to continue litigating class certification issues if the denial of his certification motion was presented while his claims were still live. Assuming *arguendo* that Grant reads *Geraghty* correctly, we conclude that, at the time he presented his motion for class certification, Grant had standing only as to his § 1396r(e)(7)(C)(i)(I)

informational claim. Therefore, even if the *Geraghty* exception permits a reconsideration of certification, Grant cannot seek relief for the proposed class.

In *Geraghty*, the representative plaintiff, a federal prisoner, brought a proposed class action challenging parole guidelines. The district court denied class certification, and Geraghty appealed that decision as class representative. While the appeal was pending, Geraghty was released from prison, and defendants sought to dismiss the appeal as moot. The Court held that, despite the expiration of Geraghty's claim, the class's claim remained live.

A plaintiff bringing a class action presents two claims for review—one on the merits and one that he is entitled to represent a class. *Geraghty*, 445 U.S. at 402. In *Zeidman*, we explained that *Geraghty* established that "the mootness doctrine has two aspects: a justiciable case must continue at each stage of the litigation (1) to present a 'live controversy,' and (2) to be urged before the court by parties who have a 'personal stake' in that controversy." *Zeidman*, 651 F.2d at 1042. Despite the mootness of the representative plaintiff's claims in *Geraghty* and *Zeidman*, both reviewing courts found that a live controversy existed for at least some class members. The *Geraghty* Court observed this was demonstrated by the fact that other prisoners affected by the guidelines had moved to substitute, or intervene, as class representatives. 445 U.S. at 396. In *Zeidman*, 651 F.2d at 1042, we observed that the controversy was "undoubtedly still live," because the proposed classes "contain at least some number of persons who sold B&W securities during the periods at issue."

Though no parties have sought to intervene

6

or substitute in Grant's place, we assume a live controversy still exists. The proposed class definition refers to all nursing home residents who, *inter alia*, "because of Defendants' failure to provide them or their legally authorized representatives with a clear explanation about available community-based Medicaid waiver placements, remain confined in nursing facilities." Grant's counsel, a legal service agency, assures us that it represents other clients, with a continuing live interest in the case, who can represent the class if necessary. *Reed v. Heckler*, 756 F.2d 779, 786 n.9 (10th Cir. 1985). This is not a case in which the entire class's claims are mooted because of the defendant's general policy change. *See Singleton v. Apfel*, 231 F.3d 853, 854-55 (11th Cir. 2000); *Sze v. Immigration & Naturalization Serv.*, 153 F.3d 1005, 1009-1010 (9th Cir. 1998). In fact, defendants contend the information provided in the CHO-1 letter is adequate.

Whether, in light of our finding that Grant had standing to bring only one of his proposed claims, he possesses a "personal stake" in certifying the class is a different matter. The *Geraghty* Court relied on the "flexible character of the Art. III mootness doctrine" and the pragmatic justifications underlying the class action device to find that the representative plaintiff maintained a personal stake in certifying the class. 445 U.S. at 400-03.[8] So long as there "are sharply presented issues in a concrete factual setting and self-interested parties vigorously advocating opposing positions," the representative's ongoing interest in certification creates an Article III controversy. *Id.* at 403 (citations omitted). It goes without saying that before seeking certification, representative plaintiffs still must establish standing.[9]

Given that Grant had standing to bring only the § 1396r(e)(7)(C)(i)(I) informational claim, he lacks a personal stake in certifying the proposed class. That proposed class seeks a declaration of eligibility for waiver services and injunctive relief forcing the state to provide services, so Grant, as a party who never had standing, cannot be said to be "self-interested" or capable of presenting the claims as "sharply presented issues."[10]

It may be that the majority of class members, like Grant, have never applied for

---

[8] Consistent with this view is *Sosna v. Iowa*, 319 U.S. 393, 402 (1975), holding that a named plaintiff whose claim on the merits expires *after* class certification may still adequately represent the class.

[9] *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) (stating that "even named plaintiffs who represent a class must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent" (internal quotation marks omitted)); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) (stating that standing is an "inherent prerequisite to the class certification inquiry").

[10] Grant's situation is analogous to that of a plaintiff who never seeks class certification but argues his right to represent others following the mooting of his claim. In *Sannon v. United States*, 631 F.2d 1247, 1251 (5th Cir. 1980), we found *Geraghty* inapplicable to such a situation, because the plaintiff "never moved the court for class certification and thus never solidified the requisite Article III adverseness between members of the would be class" and the defendants. Similarly, Grant's failure to establish standing as to his non-§ 1396r(e)(7)(C)(i)(I) claims means he cannot proceed with certification.

7

waiver services and consequently lack standing to bring the additional claims. If so, and class members still wish to proceed with a § 1396r-(e)(7)(C)(i)(I) informational claim, a class representative not currently receiving waiver services must file a new complaint. A plaintiff who never had standing to pursue the full claims of the class lacks a personal stake in litigating certification; therefore, the class claims are moot.[11]

The appeal is DISMISSED as moot.

---

[11] This is not a case in which the relation back doctrine favors Grant's proceeding as class representative. That doctrine is applied to inherently transitory claims, *Gerstein v. Pugh*, 420 U.S. 103 (1975), and cases in which defendants tender plaintiffs their personal claims, *Zeidman*, 651 F.2d at 1048. In both, the plaintiff's claim is prematurely mooted, thus justifying his continuance as class representative. Grant contends that defendants will "have the option of providing information necessary for new plaintiffs to make an informed choice, thereby preventing this issue from ever reaching the certification stage." This point ignores the fact that Grant's *own* actions, not the state's, mooted his claim, and overlooks the ability of future class representatives to invoke *Geraghty* should they have standing as to all claims for which they seek certification.