# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00600-CV

**Williamson County, Honorable Dan A. Gattis, Honorable Suzanne Brooks,
Honorable Tim Wright, Honorable Donald Higginbotham,
and Honorable William Thomas Eastes, in their official capacities, Appellants**

**v.**

**Kerry Heckman, Monica Maisenbacher, Sylvia Peterson, Tammy Newberry,
Elveda Vieira, and Jessica Stempko, on behalf of themselves
and all other persons similarly situated, Appellees**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
NO. 06-453-C277, HONORABLE JOSEPH H. HART, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

In this appeal from an order denying a plea to the jurisdiction, we principally consider whether a group of plaintiffs have retained standing to pursue claims on behalf of a putative class where it is undisputed that their respective individual claims have become moot. Under the circumstances presented here, we conclude they have not. Accordingly, we will vacate the district court's order denying the plea to the jurisdiction and render judgment dismissing the claims.

## BACKGROUND

Appellees sued appellants Williamson County and its constitutional county judge, its three county court-at-law judges who preside over misdemeanor criminal cases, and its

magistrate judge, each in his or her official capacity[1] (collectively, "appellants") seeking prospective declaratory and injunctive relief to restrain what appellees asserted were ongoing deprivations of (1) the right to counsel for indigent misdemeanor criminal defendants charged with crimes punishable by imprisonment, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, article I, section 10, of the Texas Constitution, and the Texas Fair Defense Act; (2) the right to self-representation, in violation of the Sixth and Fourteenth Amendments and article I, section 10; and (3) the open-courts protections of the Sixth Amendment and article I, section 13 of the Texas Constitution. In addition to relying on the Uniform Declaratory Judgments Act[2] and chapter 65 of the civil practice and remedies code[3] for the remedies they sought, appellees purported to invoke 42 U.S.C. § 1983, pleading that the asserted federal constitutional violations were the product of appellants' "custom or practice."[4]

---

[1] Where there has been a change in the interim, we have substituted the current officeholder. *See* Tex. R. App. P. 7.2(a).

[2] *See* Uniform Declaratory Judgments Act (UDJA), Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008).

[3] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 65.011, .021-.031 (West 2008).

[4] *See* 42 U.S.C.A. § 1983 (West 2003). Section 1983 requires that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." *Id.* As detailed below, virtually all of the acts of which appellees complain are acts within the judicial capacity of the three county-court-at-law judges and the magistrate. *See Davis v. Tarrant County, Tex.*, 565 F.3d 214, 223 (5th Cir.) (appointment of counsel for indigent defendants is an act within judge's judicial capacity), *cert. denied*, 130 S.Ct. 624 (2009). As there is no allegation that these appellants violated a declaratory decree or that declaratory relief is unavailable, appellees presumably are relying solely on chapter 65 of the civil practice and remedies code in seeking injunctive relief against them.

2

At the time each of the six appellees joined the lawsuit as a plaintiff, five of them—Kerry Heckman, Monica Maisenbacher, Sylvia Peterson, Tammy Newberry, and Elveda Vieira—had been charged in Williamson County with misdemeanor criminal offenses punishable by imprisonment and were at various stages in the pretrial process.[5] Each was alleged to be indigent and unable to afford a lawyer, and it was asserted that each either had been or would be subjected to various deprivations of his or her right to counsel. The remaining appellee, Jessica Stempko, was alleged to be the mother of a defendant who had been charged with a misdemeanor offense punishable by imprisonment.[6] It was alleged that Stempko desired to accompany her daughter to an upcoming court appearance but anticipated that she would be excluded from the courtroom in violation of open-courts protections. It was similarly alleged that Vieira desired to have a friend accompany her to an upcoming court appearance and anticipated that her friend would be excluded from the courtroom.

In addition to seeking relief with respect to the criminal proceedings in which they were personally involved, appellees purported to act on behalf of a putative class of "all individuals who are accused of a misdemeanor crime in Williamson County who face the possibility of incarceration as a punishment if convicted of such crime and who cannot afford counsel." With their original petition, appellees filed a motion to certify the class. In their attempts to plead the "custom"

---

[5] Heckman had been charged with driving while intoxicated; both Maisenbacher and Newberry with family violence assault with bodily injury; Peterson with DWI, reckless driving, and two counts of theft; and Vieira with resisting arrest.

[6] Stempko's daughter, Kelsey Stempko, had drug-related arrests and related motions to revoke probation, including a June 2006 charge for marijuana possession that gives rise to Stempko's claim here. Kelsey, through Jessica as next friend, initially joined the suit as a plaintiff but, after reaching the age of majority, non-suited her claims.

or "usage" necessary to invoke section 1983, bolster their arguments for class certification,[7] and otherwise distinguish their claims from individualized complaints of error in disparate criminal proceedings that would find adequate remedy in the ordinary appellate process or post-conviction relief, appellees have advanced the assertion that Williamson County's court-at-law judges and magistrate are engaging in "a systematic and deliberate scheme to deprive persons accused of misdemeanor offenses in Williamson County of their right to be represented by counsel and of their right to obtain court-appointed counsel when they are financially unable to hire a lawyer." In the face of this pervasive judicial "practice" or "scheme" (which appellees also label a "conspiracy") to intentionally disregard the law (not to mention the judges' oaths of office and the Code of Judicial Conduct), appellees insist that systemic, class-wide declaratory and injunctive intervention into the putative class members' ongoing criminal proceedings is appropriate and essential to meaningfully protect their rights.

In response to these allegations, which they condemned as "slander," appellants filed a general denial and moved to sanction appellees for filing groundless pleadings. They also filed pleas to the jurisdiction. Appellants disputed whether the district court had subject-matter jurisdiction to intervene in equity into pending criminal proceedings and whether appellees had standing to assert the claims. Appellants presented evidence, which appellees did not controvert, demonstrating that during the interim Heckman, Maisenbacher, and Peterson had each been

---

[7] Appellees attempt to draw parallels to previous class-action challenges to allegedly under-funded or inadequate systems of indigent defense that have found varying decrees of success in other jurisdictions. *See, e.g.*, *Luckey v. Harris*, 860 F.2d 1012, 1013, 1016-18 (11th Cir. 1988).

appointed counsel and that the criminal proceedings against each had been finally concluded.[8] Appellants also presented uncontroverted evidence that an unnamed "presiding judge" in the county court-at-law whom appellees had pled had denied Heckman, Maisenbacher, and Peterson appointed counsel had actually been a visiting judge—not any of the defendant county court-at-law judges. Following a hearing, the district court denied the plea but immediately stayed trial court proceedings while appellants brought this interlocutory appeal of that ruling.[9] The district court did not rule on appellees' class-certification motion.

## ANALYSIS

In four issues, appellants assert that the district court lacks subject-matter jurisdiction to grant the relief appellees seek regarding pending criminal proceedings, that appellees lack standing because their individual claims are moot, and that the open-courts claims are not ripe. Additionally, during the pendency of this appeal, appellants have filed supplemental briefing and a motion to dismiss urging that intervening developments have mooted any remaining individual claims of appellees as well as the claims appellees seek to assert on behalf of the putative class. Appellants presented proof that, like the criminal proceedings against the other plaintiffs, the criminal proceedings concerning Newberry, Vieira, and Stempko have finally concluded. They also demonstrated that the Williamson County courts in the interim have revised their policies and procedures governing legal representation for indigents in misdemeanor cases in response to

---

[8] Heckman and Peterson, with assistance of court-appointed counsel, made plea bargains. The charges again Maisenbacher were dismissed on the State's motion.

[9] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008).

5

changes in the governing law. We need only address appellants' contentions regarding standing and mootness, as they are dispositive.

**Standard and scope of review**

A plea to the jurisdiction challenges a trial court's authority to decide the merits of a cause of action. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Analysis of whether this authority exists begins with the plaintiff's live pleadings. *Id.* at 226. The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). This burden requires that the plaintiff plead facts, not merely conclusions or legal characterizations. *See Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, ___ S.W.3d ___, No. 03-09-00460-CV, 2010 WL 715385, at *7, *15 (Tex. App.—Austin Mar. 3, 2010, no pet. h.); *Good Shepherd Med. Ctr., Inc. v. State*, ___ S.W.3d ___, No. 03-09-00460-CV, 2010 WL 566695, at *8 (Tex. App.—Austin Mar. 3, 2010, no pet. h.). Whether the plaintiff met this burden is a question of law that we review de novo. *Miranda*, 133 S.W.3d at 225-26. We construe the pleadings liberally, taking them as true, and look to the pleader's intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiffs should be afforded the opportunity to amend. *Id*. at 226-27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

6

When resolving issues presented by the plea to the jurisdiction, we may consider evidence submitted by the parties and must do so when necessary to resolve the jurisdictional issues. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). In fact, in a plea to the jurisdiction, a party may present evidence to negate the existence of a jurisdictional fact alleged in the pleadings, which we would otherwise presume to be true. *See Miranda*, 133 S.W.3d at 227. To the extent the challenge implicates the merits of the plaintiff's cause of action, the party asserting the plea has the burden of negating a genuine issue of material fact as to the jurisdictional fact's existence, in a manner similar to a traditional summary-judgment motion. *See id.* at 227-28. Whether the party meets this burden is a question of law that we review de novo. *Id.* at 228. If the pleading requirement has been met and the party challenging jurisdiction submits evidence that implicates the merits of the pleader's cause of action, we take as true all evidence favorable to the pleader and indulge every reasonable inference and resolve any doubts in the pleader's favor. *Id.* To the extent the challenge to a jurisdictional fact does not implicate the merits of the pleader's cause of action, on the other hand, the trial court explicitly or impliedly finds whether or not that fact exists. *See Good Shepherd*, 2010 WL 566695, at *4. Such a finding is subject to challenge on the basis that it is not supported by legally or factually sufficient evidence. *See id.* In either case, our ultimate inquiry is whether the jurisdictional facts the plaintiff has pled and that have not been negated as a matter of law by evidence affirmatively invoke the trial court's subject-matter jurisdiction. *Creedmoor-Maha*, 2010 WL 715385, at *7 & n.8.

**Standing and mootness:  general principles**

Among the requirements that a plaintiff must satisfy to invoke a trial court's subject-matter jurisdiction is the constitutional prerequisite of standing to assert the cause of action.  *See Texas Ass'n of Bus.*, 852 S.W.2d at 443-45 ("[W]e conclude that standing is a component of subject matter jurisdiction . . . .").[10]  The general test for constitutional standing in Texas courts is whether there is a "real" (i.e., justiciable) controversy between the parties that will actually be determined by the judicial declaration sought.  *See id.* at 446.  Constitutional standing is thus concerned not only with whether a justiciable controversy exists, but whether the particular plaintiff has a sufficient personal stake in the controversy to assure the presence of an actual controversy that the judicial declaration sought would resolve.  *See Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998); *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996).  The United States Supreme Court, applying standing principles that are analogous to Texas standing jurisprudence, at least with respect to challenges to governmental action, has further explained that the "irreducible constitutional minimum" of standing consists of three elements:

(1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a 'legally protected' [or cognizable] interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical'";

(2) "there must be a causal connection between the injury and the conduct complained of"—the injury must be "fairly traceable" to the challenged action of the defendant and not the independent action of a third party not before the court; and

---

[10] *Cf. Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 9 n.16 (Tex. 2008) (observing that federal standing doctrine has both jurisdictional and prudential components and that "[t]his Court has not indicated whether standing is always a matter of subject-matter jurisdiction").

(3)    it must be likely, and not merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001) ("[W]e may look to the similar federal standing requirements for guidance."); *Good Shepherd*, 2010 WL 566695, at *5-6. "Injury-in-fact," the cornerstone of these requirements, does not require a plaintiff to prove that he or she has actually incurred a *legal* injury—i.e., whether the plaintiff has a viable cause of action on the merits. *See Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984); *Good Shepherd*, 2010 WL 566695, at *6. Nonetheless, it remains that a plaintiff must show that it has or imminently will suffer an invasion of some "legally protected" interest that is sufficiently unique to the plaintiff, as distinguished from third parties or the general public, to ensure that the plaintiff has a sufficient personal stake in the controversy so that the lawsuit would not yield a mere advisory opinion (i.e., a decision on an abstract question of law that does not bind the parties) or draw the judiciary into generalized policy disputes; both classes of issues are the province of the other branches. *See Texas Ass'n of Bus*., 852 S.W.2d at 444; *Good Shepherd*, 2010 WL 566695, at *6.

A plaintiff must have standing not only at the inception of the suit, but at every stage thereafter, including appeal. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). If a justiciable controversy between the parties ceases to exist either because the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome, the case is moot and the parties generally lose any standing they possessed to prosecute their claims. *Id.* If a case is moot,

9

an appellate court is required to vacate any trial court order or judgment and dismiss the case. *See Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 228 (Tex. 1993).

Subject-matter jurisdiction cannot be waived and may be raised at any time (including appeal) by a party or a court sua sponte. *See Texas Ass'n of Bus.*, 852 S.W.2d at 445. Indeed, courts *must* raise subject-matter jurisdiction sua sponte and dismiss a cause where jurisdiction is lacking. *See University of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex. 2004).

Appellees concede that the final conclusions of the criminal proceedings that affected each of them personally have mooted their individual claims for relief. *See Williams*, 52 S.W.3d at 183-85; *Speer*, 847 S.W.2d at 229-30.[11] It would ordinarily follow that we must dismiss appellees' suit as moot. *See Speer*, 847 S.W.2d at 228. Although appellees have purported to assert claims both individually and on behalf of a putative class, no class has been certified,[12] and appellees remain the sole plaintiffs before this Court. And, because these sole plaintiffs have no live individual claims, they lack standing, all other things being equal, to assert claims on behalf of the putative class. *See Texas Commerce Bank v. Grizzle*, 96 S.W.3d 240, 255-56 (Tex. 2002) ("[I]f a putative class representative has no live individual claim, that individual has no standing to bring suit on behalf of a putative class," and "claims made on behalf of a putative class by such an individual must fail as a matter of law."); *Grant v. Gilbert*, 324 F.3d 383, 389 (5th Cir. 2003) ("As

---

[11] Appellees' claims, as previously noted, sought only prospective declaratory and injunctive relief.

[12] Appellees did, however, preserve their contention that the class should be certified by filing their certification motion and seeking to have it heard. *Cf. In re M.M.O.*, 981 S.W.2d 72, 81-82 (Tex. App.—San Antonio 1998, no pet.) (observing that "[b]ecause a personal stake in the litigation is necessary for justiciability, courts have held that a class action is moot when the class representatives' claims become moot before they seek class certification").

a general rule, 'a purported class action becomes moot when the personal claims of all named plaintiffs are satisfied and no class has been properly certified.'" (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1045 (5th Cir. Unit A July 1981)).

Appellees urge that although their individual claims are now moot, they nonetheless have standing to continue pursuing the claims on behalf of the putative class and that those claims remain live and justiciable. They rely on an exception to the mootness doctrine that has developed primarily in federal class-action jurisprudence. This exception is founded on the concept that a plaintiff bringing a class action presents two claims for review—(1) a claim on the merits; and (2) a further claim that he is entitled to represent the class in prosecuting the claim on the merits on its behalf. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 402 (1980). While standing to assert the latter type of claim ordinarily cannot exist without standing to assert the former, *see Grant*, 324 F.3d at 390 & n.9, in certain circumstances courts have reasoned that the expiration of a plaintiff's individual claim during the litigation does not necessarily deprive him of a justiciable interest in pursuing certification of the class (and, if successful, ultimately representing it in prosecuting the class claims[13]). *See Geraghty*, 445 U.S. at 400-03; *Grant*, 324 F.3d at 389 (discussing *Geraghty*); *cf. Sosna v. Iowa*, 419 U.S. 393, 402 (1975) (discussing analogous principles that apply where a named plaintiff's claim on the merits expires *after* class certification). This exception has been applied where the individual claims of named plaintiffs seeking to represent a class are deemed to be so "inherently transitory" that none could reasonably obtain class certification

---

[13] If, on the other hand, certification cannot be obtained, the claims of the putative class would be moot. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980).

11

before their individual interests expired. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975); *see also M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708-09 (Tex. 2001) (terming "[t]he exception recognized in *Sosna* and *Geraghty*" as "only a narrow exception to the principles of jurisdiction that 'require that the plaintiff's personal stake in the litigation continue[s] throughout the entirety of the litigation'" (quoting *Sosna*, 419 U.S. at 402)).

Where the exception is held to apply, certification (if it ultimately can be obtained) will be deemed to "relate back" to the time the plaintiff first sued for purposes of determining the plaintiff's standing to represent the class. *See McLaughlin*, 500 U.S. at 51-52. Consequently, a plaintiff must have had individual standing to assert the claims on the merits at the time he first sued in order to benefit from the exception. *See M.D. Anderson Cancer Ctr.*, 52 S.W.3d at 709 ("The exception . . . does not apply to Novak," the sole named plaintiff, because "[a]t no time during the course of this litigation has Novak had individual standing."); *Tarrant County, Tex. Comm'rs Ct. v. Markham*, 779 S.W.2d 872, 876-77 (Tex. App.—Fort Worth 1989, writ denied) (holding that "relation back" exception to mootness doctrine did not apply where plaintiff did not have standing at the time litigation commenced); *Grant*, 324 F.3d at 386 ("If Grant did not have standing when he sued, whether the expiration of his claims makes him ineligible to proceed as class representative becomes, for lack of a better description, a moot issue."). And, with regard to class certification in particular, "[a] plaintiff who never had standing to pursue the full claims of the class lacks a personal stake in litigating certification." *Grant*, 324 F.3d at 390.

In addition to these limitations, the claims of the putative class, like any other claim, may be rendered moot if a live controversy concerning those claims ceases to exist during the pendency of the litigation. *See id.* at 389-90 (observing that a "general policy change" might render moot "an entire class's claims").

Assuming without deciding that the foregoing exception to the mootness doctrine could apply here, we conclude that appellees lack standing to pursue class certification and that, consequently, appellees' suit must be dismissed as moot. This conclusion is based on our examination of appellees' live pleadings, the jurisdictional evidence, and other filings with this Court.

**The claims**

In their live pleadings, appellees, as previously noted, attempted to assert three sets of liability theories: (1) deprivations of the right to counsel (i.e., appellants' "systematic and deliberate scheme to deprive persons accused of misdemeanor offenses in Williamson County of their right to be represented by counsel and of their right to obtain court-appointed counsel when they are financially unable to hire a lawyer"); (2) deprivations of the right to self-representation; and (3) violations of open-courts guarantees. They alleged these claimed violations were occurring at three distinct junctures in the pretrial process: (1) an initial appearance before a magistrate, "usually defendant Eastus," shortly after arrest; and (2) a "first appearance" docket before one of the county court-at-law judges after the defendant is formally charged, the procedures for which, appellees further alleged, differed for defendants who have been released on bail versus those still in custody. The declaratory and injunctive relief sought by appellees differed according to the

13

asserted violations appellees sought to restrain and the procedural juncture at which the violation is allegedly occurring.

### *Right to counsel*

#### *Magistrate proceedings*

Appellees alleged that, shortly after arrest, "[a]ll persons arrested in Williamson County for a misdemeanor offense punishable by imprisonment appear before a magistrate, usually defendant Eastus." During this proceeding, "the magistrate" determines whether there was probable cause for the arrest, determines and sets an amount for bail, and "informs each person of a number of specific rights as required by Article 15.17 of the Texas Code of Criminal Procedure."[14]

---

[14] Article 15.17 requires, in relevant part:

> The magistrate shall inform in clear language the person arrested . . . of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at any time, and of his right to have an examining trial. The magistrate shall also inform the person arrested of the person's right to request the appointment of counsel if the person cannot afford counsel. The magistrate shall inform the person arrested of the procedures for requesting appointment of counsel . . . . The magistrate shall ensure that reasonable assistance in completing the necessary forms for requesting appointment of counsel is provided to the person at the same time. If the person arrested is indigent and requests appointment of counsel and if the magistrate is authorized under Article 26.04 to appoint counsel for indigent defendants in the county, the magistrate shall appoint counsel in accordance with Article 1.051. If the magistrate is not authorized to appoint counsel, the magistrate shall without unnecessary delay, but not later than 24 hours after the person arrested requests appointment of counsel, transmit, or cause to be transmitted to the court or to the courts' designee authorized under Article 26.04 to appoint counsel in the county, the forms requesting the appointment of counsel. The magistrate shall also inform the

14

According to appellees, "the magistrate asks each person whether they plan to hire an attorney" but "*does not* ask whether the defendant wants to request the appointment of counsel," does not inform the accused "of the financial standard for determining whether they are eligible for appointed counsel," fails to "provide[] sufficient information to evaluate whether [defendants] have a right to appointed counsel," and that "[n]o lawyer is provided to consult with them." "Instead," appellees asserted, the accused "are specifically and intentionally discouraged from requesting court-appointed counsel if their family members or friends may be able to collect the funds necessary to post bond." Appellees elaborated that "persons appearing before the magistrate are instructed to wait a few days before they file a written request for counsel so that an appointment may be avoided if they will be able to bond out of jail," and "are specifically informed that the magistrate will not appoint counsel for persons who are going to be released from jail on bond."

Based on the accused's response, "the magistrate . . . completes a standardized form indicating that a person has requested appointed counsel, plans to hire counsel, or intends to proceed without counsel." Appellees complained that "[a]s a result of Williamson County's practices," defendants are intentionally dissuaded or misled into not signing a written request for appointed counsel, thereby denying them "representation by appointed counsel after adversarial judicial proceedings have been initiated against them, in violation of their constitutional and

person arrested that he is not required to make a statement and that any statement made by him may be used against him. The magistrate shall allow the person arrested reasonable time and opportunity to consult counsel and shall, after determining whether the person is currently on bail for a separate criminal offense, admit the person arrested to bail if allowed by law.

Tex. Code Crim. Proc. Ann. art. 15.17(a) (West 2005 & Supp. 2009).

15

statutory rights." Appellees added that these defendants "proceed to subsequent stages of their criminal cases having been provided misleading information about their eligibility for appointed counsel and with an incorrect understanding of their right to counsel if they are released on bond."

Appellees sought a declaration "that Defendants' practice at magistration of providing persons accused of an offense for which a punishment of imprisonment is possible with incomplete and inaccurate information regarding the right to counsel and of discouraging unrepresented defendants from requesting appointed counsel violates the United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure." They also prayed for a corresponding injunction requiring that "at the time that all persons accused of an offense for which a punishment of imprisonment is possible come before a magistrate after their arrest, Defendants fully and completely inform all such persons regarding their right to appointed counsel, including providing accurate information regarding the standard for indigence under Texas law and local rule."

### *"First appearance" dockets*

"After the County Attorney's office files an information against them," according to appellees, "persons accused of misdemeanor offenses punishable by imprisonment are brought before one of the county courts at law for a 'first appearance docket.'"

#### Defendants still in jail

Defendants who have not been released on bail, according to appellees, "are brought before one of the county courts at law, usually on Thursday mornings," with Judges Brooks, Wright, and Higginbotham presiding over the docket on a rotating basis, "with each presiding over the

16

docket approximately once every three weeks." Appellees claimed that after the defendants are brought into the courtroom, Williamson County prosecutors are able to "talk with each accused about his or her case" and "discuss with [these] unrepresented persons plea deals that include waiver of the right to counsel." "Such discussions," appellees alleged, "typically occur before the accused persons has waived his or her right to counsel, or had an opportunity to appear before the presiding judge and request appointed counsel." "[T]ypically only after the accused have been directed to speak to a prosecutor and have agreed to a plea deal," appellees claimed, does the presiding judge "speak[] to the accused persons."

Appellees acknowledged that "[t]he presiding judge generally tells the accused they have a right to counsel and that they may plead not guilty and request appointed counsel if they are indigent." However, appellees accused the "presiding judge" of "suggest[ing] to the accused that most of them should be able to resolve their cases by speaking directly to the prosecutor without the assistance of defense counsel, and endors[ing] plea deals that are the result of uncounseled discussions between the accused and prosecutors that occurred before the accused had been informed of the right to counsel and had an opportunity to appear before the court and request counsel." Appellees further complained that "[t]he presiding judge also cautions the accused that they will be ordered to pay the cost of appointed counsel at the conclusion of their cases" but "does not explain to the accused that they will not have to reimburse . . . if they cannot afford to do so or that the cost . . . cannot be assessed if the accused is not convicted of the charged offense." Further, appellees alleged, such defendants "are not informed of the financial standard for determining if they are eligible for appointed counsel, nor are they given any information from which to evaluate whether

17

they have a right to appointed counsel," nor is a "lawyer provided to consult with them or answer questions regarding their right to appointment of counsel."

Appellees further complained that "[t]he vast majority of individuals plead guilty or no contest without counsel" and receive sentences of imprisonment or suspended sentences. Such persons are "instructed to sign a written plea form that contains language purporting to waive the accused's right to counsel." With respect to individuals who plead not guilty, "the presiding judge," appellees alleged, "asks whether they plan to retain counsel, but they typically are not asked whether they would like to request appointed counsel." However, "[s]ome of the accused reply to the presiding judge's question about their intent to hire counsel by replying that they would like to request appointed counsel." Those who do "are provided an application form."

Appellees sought a declaration "that Defendants' practice at first appearance of providing a person accused of an offense for which a punishment of imprisonment is possible with incomplete and inaccurate information regarding the right to counsel, of discouraging unrepresented defendants from requesting appointed counsel, and of encouraging unrepresented defendants to enter pleas of guilty or no contest violates the United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure" and a corresponding injunction requiring that "at the time that all persons accused of an offense for which a punishment of imprisonment is possible make their first appearance in the Williamson County courts at law, Defendants fully and completely inform all such persons regarding the right to appointed counsel, including providing accurate information regarding the standard for indigence and their financial eligibility for appointed counsel under Texas law and local rule." Appellees also requested an

18

injunction requiring "Defendants [to] refrain from discouraging and deterring, and from allowing other court personnel to discourage and deter, any person accused of an offense for which a punishment of imprisonment is possible from asserting his or her right to counsel and from requesting appointed counsel." Appellees further requested a declaration "that Defendants' practice of encouraging unrepresented persons accused of crime to discuss their cases with prosecutors and other court personnel when the accused have not knowingly or voluntarily waived their right to counsel violates the United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure" and a corresponding injunction requiring "Defendants [to] refrain from promoting, facilitating, and/or enabling any Williamson County prosecutor to have contact with unrepresented and uncounseled persons accused of an offense for which a punishment of imprisonment is possible unless and until such person knowingly and voluntarily waives his or her right to counsel."

Defendants released on bail

According to appellees, the cases against defendants who have been released on bail are set on a "bond 'first appearance docket,' which is held on Wednesday mornings" before the three county court-at-law judges "and, occasionally, visiting judges," who sit on a rotating basis similar to the first appearance docket for defendants still in jail. Appellees alleged that defendants whose cases are set on this first appearance docket are ordered to report to the courthouse at 8:30 a.m, where they are directed to a courtroom. "Beginning at or before 8:30 a.m.," according to appellees, "a bailiff addresses the accused as a group and explains courtroom procedures." "On

19

occasion," appellees allege, "the bailiff will make comments about the right to counsel . . . and will tell defendants that they should not waste the court's time asking for appointed counsel."

Following the bailiff's remarks, according to appellees, representatives of the Williamson County Clerk's office and probation department address the group. "The representatives from the clerk's office discuss procedures for paying court costs assessed in connection with a criminal conviction." The probation department representative, in turn, "discusses the standard terms of probation and how and when to report for probation upon conviction," as well as "more general legal issues, such as the various pleas that the accused may enter when called before the judge and the probation representative's understanding of the consequences of each of those pleas." The officer, according to appellees, "informs the accused that most of them will 'have an opportunity' to talk to the prosecutor and resolve their case during the course of the day." Appellees complain that during the presentations by the bailiff and representatives of the clerk's office and probation department, the defendants "are not informed of the financial standard for determining if they are eligible for appointed counsel," "are not given sufficient information to evaluate whether they have a right to appointed counsel," and "[n]o lawyer is provided to consult with them."

After these presentations, according to appellees, the presiding judge enters the courtroom. The judge, appellees acknowledged, "states that the accused have a right to counsel, and that they may plead not guilty and request appointed counsel if they are indigent." However, appellees alleged, the defendants "are not informed by the presiding judge of the financial standard for determining if they are eligible for appointed counsel," "are not given sufficient information

20

to evaluate whether they have a right to appointed counsel," and "[n]o lawyer is provided to consult with them."

Appellees further accused the presiding judges of "encourag[ing] the accused to enter a plea of guilty or no contest, which will allow them to 'have an opportunity' to talk to the prosecutor and resolve their case by the end of the day." The judge, according to appellees, "suggests to the accused that most of them should be able to resolve their cases by speaking to the prosecutor without their own lawyer." Appellees also claimed that the judge dissuades defendants from requesting counsel by "admonish[ing] the accused not to assert the right to counsel unless they are confident that they will be able to obtain counsel prior to the next court appearance, and warns the accused that they will face "serious consequences if they return to court without counsel," including, "[o]n occasion," threatening to increase the amount of bail. Appellees further alleged that "[t]he presiding judge also cautions the accused that they will be ordered to pay the cost of appointed counsel at the conclusion of their cases" but "does not explain to the accused that they will not have to reimburse . . . if they cannot afford to do so or that the cost . . . cannot be assessed if the accused is not convicted of the charged offense."

After these general admonitions, according to appellees, the presiding judge calls defendants before the bench, either individually or in small groups, asks each defendant if he or she knows the charge that has been brought against them, and, if not, "reads the charge" but "does not inform any of the accused of the elements of the offense with which they are charged." The judge, appellees further alleged, then asks each of the defendants how they plead. According to appellees, "[t]he majority of the accused plead guilty or no contest without counsel." These defendants "are

instructed to sign a form and go sit in a hallway and wait for a prosecutor to call them and discuss their case." During these discussions, "the accused are informed of the prosecutor's sentencing offer and must accept or reject it." Thereafter, appellees continued, these accused appear before the presiding judge for sentencing, where they "are instructed to sign a written plea form that contains language purporting to waive their right to counsel—though that right has never been adequately explained to the accused and the accused person's understanding of that right has been distorted through Williamson County's various practices of discouraging requests for counsel" because "Defendants have conspired to deprive indigent persons of the right to appointed counsel." The presiding judge then pronounces sentence (which, appellees complained, "usually includes an immediate or suspended term of imprisonment").

As for defendants who plead not guilty, appellees alleged, they "are asked whether they plan to retain counsel," but "generally are not specifically asked whether they would like to request appointed counsel." According to appellees, "[s]ome of the accused reply . . . that they would like to request appointed counsel," in which case they "are provided with an application form." Thereafter, appellees alleged, the presiding judge "receives each accused's application for appointed counsel and asks the accused a number of questions" that "generally do not concern the accused's income and whether that income allows him or her to retain an attorney without substantial economic hardship, but instead focus solely on the accused's employment status, ability to work, and living arrangements." Appellees further alleged that the presiding judges "routinely deny applications for appointed counsel submitted by accused who are financially unable to hire an attorney and therefore have a right to appointed counsel," including denying appointed

22

counsel "to accused who are unemployed and who have no income, and instead reset[ting] the accused person's case and order[ing] him to find employment and hire an attorney prior to the next court appearance."

In addition to the declaratory and injunctive relief they sought in regard to the first appearance docket for defendants still in custody, appellees requested a declaration "that Defendants' practice of denying counsel to persons accused of crime for which a punishment of imprisonment is possible and who are able to post bond, or whose family members and friends post bond on their behalf, when such persons are not financially able to hire a lawyer violates the United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure." Appellees also sought a corresponding injunction requiring "Defendants [to] fairly evaluate the requests for appointment of counsel made by all persons accused of an offense for which a punishment of imprisonment is possible in Williamson County, following the guidelines and standards contained in Texas law and local rule, without reference to whether the accused person's family and/or friends are able to post bond or whether the accused person is physically unable to work."

### *Right to self-representation*

In their second set of factual allegations and claims for relief, appellees pled that during the first appearances for defendants who had been released on bail, the "presiding judge," while allegedly seeking to deter or prevent defendants from asserting their right to counsel, "also tells the accused that they cannot talk to the prosecutor and attempt to resolve their case unless they enter a plea of guilty or no contest." Appellees sought a declaration "that Defendants' practice of requiring persons accused of crime and who have knowingly and voluntarily waived their right to

23

counsel to enter a plea of guilty or no contest before they can discuss their case with a prosecutor violates the United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure" and a corresponding injunction requiring "Defendants [to] refrain from interfering with the right of persons accused of crime to represent themselves, including during any period of time prior to entry of a plea, and with the ability of any Williamson County prosecutor and/or any accused who has knowingly and voluntarily waived his or her right to counsel to discuss the accused's case."

### *Open-courts protections*

In their third and final set of factual allegations and claims for relief, appellees complained that the magistrate proceedings "are held in a secure area within the [Williamson County] jail and are not open to family members or members of the public." Similarly, with respect to the first appearance docket for defendants who had been released on bail, appellees allege that "bailiffs" restrict access to the courtroom solely to persons with cases on the docket and exclude "family members of the accused and members of the public." Appellees requested a declaration "that Defendants' practice of denying members of the public access to public court proceedings including magistration and the first appearance dockets violates the United States Constitution and the Texas Constitution" and a corresponding injunction requiring "Defendants [to] allow members of the public access to court proceedings, including magistration and first appearance proceedings."

**Are the claims still live?**

During the pendency of this appeal, as mentioned, appellants have alerted this Court to changes in their local policies governing the pretrial proceedings to which appellees' claims are addressed. Appellants point out, for example, that they have amended their magistrate procedures to ensure the provision of additional information and assistance to accused persons regarding their right to counsel[15] and refined their procedures for ensuring prompt appointment of counsel when a request is made. Appellants also emphasize intervening changes in the law, which, they aver, have informed some of their changes to local policies. These include the Texas Legislature's enactment of detailed new restrictions on prosecutors' ability to obtain waivers of the right to counsel from criminal defendants,[16] and a U.S. Supreme Court decision—reversing decisions of the Fifth Circuit and the Western District of Texas[17]—holding that the Sixth Amendment right to counsel attaches during the Texas "article 15.17 hearings" before a magistrate.[18] Urging that these legal and policy changes have effectively afforded appellees any relief they seek in this lawsuit, appellants argue that the claims of the putative class are now moot.

---

[15] E.g., providing defendants a document titled "Information About Your Right to a Court-Appointed Attorney" that details how and when they can obtain appointed counsel, and requiring the magistrate to "[e]nsure that reasonable assistance in completing the necessary forms for requesting appointment of counsel is provided to the person."

[16] *See* Act of May 17, 2007, 80th Leg., R.S., ch. 463, §§ 1-4, 2007 Tex. Gen. Laws 821.

[17] Williamson County is located within both the Western District and the Fifth Circuit and would be bound by the precedents of those federal courts unless and until reversed.

[18] *See generally Rothgery v. Gillespie County*, 128 S. Ct. 2578, 2581-92 (2008).

Appellees dispute whether these changes serve to moot the putative class's claims. Having accused appellants of engaging in a "scheme" or "conspiracy" to intentionally violate the rights of criminal defendants, appellees insist that any changes to written policies or underlying legal requirements fail to negate the existence of appellants' "actual practices." However, we need not address this issue or how, procedurally, we would decide it in the context of this appeal. Regardless whether any of the claims of the putative class would otherwise remain live, there is no plaintiff who currently has standing to pursue certification despite the expiration of his individual claims.

The record relevant to appellees' standing at the time of suit consists of both appellees' live pleadings and evidence presented by appellants in support of their pleas to the jurisdiction. They establish the following facts of significance to our analysis:

- By the time each appellee joined the suit,[19] he or she had already appeared before the magistrate (or, in the case of Stempko, her daughter had already done so). Appellees did not allege that any of these individuals faced the prospect of appearing before the magistrate again; to the contrary, it was alleged that each had proceeded, or would soon proceed, to the first appearance docket, the next stage in the pretrial process. Appellees' claims, again, sought only prospective relief. Having already appeared before the magistrate by the time they sued, with no ripe prospect of doing so again, no appellee ever had standing to assert the claims regarding magistrate proceedings. *See Williams*, 52 S.W.3d at 184.

- Appellees have not alleged that any of them has been or will be deprived of any right to self-representation. To the contrary, each appellee who was a defendant in a misdemeanor criminal proceeding at time of suit alleged that he or she had requested appointed counsel. Consequently, no appellee ever had standing to assert the claims seeking declaratory or

---

[19] Heckman, Maisenbacher, and Peterson each joined in appellees' original petition, filed on June 12, 2006. Newberry and Vieira were added in appellees' first amended petition, filed on July 18, 2006, while Stempko (along with her daughter) was added in a second amended petition filed on July 21, 2006.

injunctive relief to restrain alleged violations of the right to self-representation. *See Grant*, 324 F.3d at 390 & n.9 ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996))).

- Each appellee who was a defendant in a misdemeanor criminal proceeding had been released on bail by the time each sued. As a result, none had standing to assert the claims regarding the first appearance docket procedures that are allegedly applied to defendants still in custody. *See id.*

In addition to these omissions, several appellees lacked individual standing with respect to other claims. For example, Stempko complains only of impending open-courts violations, while no other plaintiff except Vieira purports to allege such an injury. Also, Heckman and Maisenbacher (as well as Peterson) had already made their appearance during the first appearance docket by the time he or she sued and would thus lack standing to seek prospective relief regarding those proceedings. *See Williams*, 52 S.W.3d at 184. Additionally, it is undisputed that the presiding judge during these proceedings was a visiting judge, not any of the three county court-at-law judges who are defendants. Further, although Heckman, Maisenbacher, and Peterson each alleged that he or she had still not been appointed counsel as of the date of suit despite being entitled to one—which potentially could give rise to a justiciable interest in the relief that would compel appointment of counsel—the jurisdictional evidence is uncontroverted that Maisenbacher was appointed counsel on the same day she joined the suit and Heckman one day thereafter. Any justiciable interest these appellees had in such a claim was thus largely theoretical.

In sum, the record establishes that appellees, both individually and collectively, have never had standing to pursue the full claims of the putative class. Consequently, they

lack standing to litigate whether that class should be certified. *Grant*, 324 F.3d at 390. Thus, there is no plaintiff with standing to pursue the claims of the putative class, nor can there be. The claims are, therefore, moot.

## CONCLUSION

Because appellees' individual claims are moot and each lacks standing to continue litigating certification on behalf of the putative class, we hold that appellees' suit is moot. *See Grizzle*, 96 S.W.3d at 255-56. Consequently, we must vacate the district court's order denying appellants' plea to the jurisdiction and dismiss appellees' claims for want of subject-matter jurisdiction. *See Speer*, 847 S.W.2d at 228.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop;
   Concurring Opinion by Justice Patterson

Vacated and Dismissed for Lack of Subject-Matter Jurisdiction

Filed: April 23, 2010